In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2815

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRANDON H. CHARLES,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 49—**Charles N. Clevert, Jr.**, *Judge.*

---

ARGUED APRIL 4, 2006—DECIDED FEBRUARY 9, 2007

---

Before POSNER, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* Brandon H. Charles was arrested as he fled a house where he had been selling cocaine. After being given *Miranda* warnings, he was interviewed by a Milwaukee police detective. He agreed to provide information to the detective about his supplier in exchange for what he hoped would be favorable consideration from the local district attorney. Unfortunately for Charles, he wound up in federal rather than state court, where the state prosecutor's word carried little weight. After a trial, he was convicted of possession with intent to distribute cocaine and sentenced to 10 years in prison, the statutorily prescribed mandatory minimum, and eight years of supervised release.

Charles now contends that his incriminating statements were involuntary and should have been suppressed. The district court's conclusion otherwise was not erroneous, however, and so we affirm Charles's judgment of conviction.

**I**

Charles was arrested on February 10, 2004, when he attempted to slip away from a Milwaukee residence that the police were searching pursuant to a warrant. The police found several rocks of cocaine base in a utility room, a .45 caliber pistol under a couch cushion in the living room, and about $900 on Charles's person. Charles had two prior drug convictions at the time of his arrest.

At the police department, Detective Wendall "Mike" Kurowski spoke with Charles in an interview room. Kurowski was the only officer in the room; Charles was not handcuffed; and both men wore casual clothes. Kurowski and Charles testified about this interview at a suppression hearing, and their accounts are largely the same. Kurowski advised Charles of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Charles indicated that he had been so advised previously, that he understood his rights, and that he was willing to talk.

The two differed on only two points—why Charles had been arrested and what exactly Kurowski said to Charles to induce him to make incriminating statements. On the first point, Kurowski testified that he informed Charles that he had been arrested because of the cocaine in the house. Charles testified that he thought he had been picked up on a loitering warrant, but that Kurowski tricked him by telling him he had sold drugs to an undercover officer, which he had not. It was that lie by

Kurowski, Charles claimed, that led him to incriminate himself and try to make a deal. Kurowski testified that Charles admitted to dealing cocaine from the house after Kurowski pointed out all of the evidence collected there, including the drugs and gun and the potential for finding Charles's fingerprints on something. As to the reward for cooperating, Kurowski testified that he told Charles that he might receive consideration from the district attorney if he assisted the police with information about where he obtained the cocaine. Kurowski believed that he and Charles had developed a "rapport" and that Charles was ready to cooperate with the police; the detective assumed the case would be prosecuted in state, not federal, court. Charles testified that Kurowski promised that the charges would be dropped—a promise Kurowski emphatically denied making. In any event, Charles gave Kurowski a full statement. He admitted to selling five rocks of cocaine prior to the arrival of the police, to holding an additional baggie of rock cocaine for a friend, and to having handled the gun that the police found. The whole interview lasted less than 45 minutes.

For reasons best known to the prosecutors, Charles was indicted by a federal grand jury and charged with possession of both the drugs and the gun found in the house. He challenged the admission of his statements to Kurowski, contending they were unconstitutionally obtained. The magistrate judge presiding over the suppression hearing concluded, in his recommendation to the district court, that Charles had talked voluntarily: "Merely pointing out, what is anyway obvious, that cooperation with the police can result in a reduced sentence or other concessions down the road is not a promise and is not calculated to prevent the suspect from rationally considering whether or not to speak." The magistrate judge pointed to the length of the interview, the comfortable circumstances, and Charles's prior experience with

*Miranda* warnings and the criminal justice system. The magistrate judge also found Kurowski's testimony more credible than Charles's, to the extent the two differed.

Charles filed a motion to "review" the magistrate judge's proposed findings of fact and recommendation that the statements were voluntary and should not be suppressed, claiming they were "in error." He then filed a general objection, also seeking *de novo* review. The district court reasoned that his objections were too general to satisfy 28 U.S.C. § 636(b)(1) and adopted the magistrate judge's recommendation. Charles went to trial, the statements were admitted, and he was convicted of the drug charge. The jury acquitted him on the charge of unlawful possession of the firearm seized at the house. The district court sentenced Charles to 10 years in prison, the mandatory minimum under 21 U.S.C. § 841(b)(1)(B) because of his prior felony drug offense, as well as eight years of supervised release. Charles appeals, challenging only the voluntariness of his incriminating statements.

## II

Before we turn to the voluntariness of the confession, we must first consider the government's argument that Charles waived this issue by failing to file an adequate objection to the magistrate judge's recommendation that the confession be deemed voluntary. Waiver requires intentional relinquishment of a known right, whereas forfeiture is the result of an unintentional relinquishment of the right. See *United States v. Baretz*, 411 F.3d 867, 875 (7th Cir. 2005). Waiver precludes review, whereas forfeiture permits plain error review. *Id.* In the absence of waiver or forfeiture, we review the voluntariness of the statements *de novo* and related factual findings for clear error. See *United States v. Gillaum*, 372 F.3d 848, 855 (7th Cir. 2004).

Where an issue is first decided by a magistrate judge, "[t]he general rule within the Seventh Circuit is that if a party fails to file an objection with the district court, he or she waives the right to appeal all issues, both factual and legal." *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003) (internal quotation marks omitted). "The purpose of this waiver rule is to promote efficiency between the district and appellate courts, so that district courts have the opportunity to nip errors in the bud without requiring them to conduct plenary reviews of proceedings supervised by magistrate judges." *United States v. Hall*, 462 F.3d 684, 688 (7th Cir. 2006). See also *Hernandez-Rivas*, 348 F.3d at 598; *United States v. Brown*, 79 F.3d 1499, 1503-05 (7th Cir. 1996). There is an exception if applying waiver would "defeat the ends of justice." *Hernandez-Rivas*, 348 F.3d at 598.

We are satisfied that Charles did not waive his right to have the suppression issue reviewed. The magistrate judge's recommendation on May 20, 2004, addressed only one issue: "whether Kurowski extended promises to Charles of such a nature (and thereby created expectations of such a lofty nature in Charles) that his will was overborne, thereby rendering his statement to Kurowski involuntary." In response to the adverse recommendation, Charles objected twice. First, on May 26, 2004, Charles filed a "Motion to Review Magistrate Judge William E. Callahan, Jr.'s Findings Regarding Defendant's Motion to Suppress Statements." In that motion, Charles contended that the magistrate judge's recommendation was "in error," and he requested that the district court "review the evidence and briefs and rule in this matter." On June 1, 2004, Charles filed "Defendant's Objection to Magistrate Judge William E. Callahan, Jr.'s Recommendation Regarding Defendant's Motion to Suppress Statements," which also objected to the recommendation "in its entirety" and requested *de novo* review. The district court

found the first of the two filings, "though not labeled as an 'objection' *per se*" to be "decidedly an objection." The court reasoned that 28 U.S.C. § 636(b)(1) "guides the court's inquiry, imposing a *de novo* standard of review 'of those portions of the report or specified proposed findings or recommendations to which objection is made.'" Because of the generality of Charles's objection, however, the court found it did not suffice for purposes of § 636(b)(1). Nevertheless, in adopting the magistrate judge's recommendations, the district court found that he "addressed every argument and came to a well-reasoned conclusion." The government argues that Charles's general objection was the equivalent of no objection at all, and thus should be treated as a knowing waiver of his right to appellate review of the voluntariness issue.

In our view, the district court was splitting hairs too finely here. It properly found that Charles's first filing was an objection, albeit a general one. This objection was enough to point the district court in the right direction, in this single-issue case, so that it could conduct the kind of review of the report and recommendation contemplated by 28 U.S.C. § 636(b)(1). (Since the first filing was a timely objection, we need not reach the government's argument that the second filing on June 1, 2004, was untimely.) Under 28 U.S.C. § 636(b)(1)(A)-(B), a magistrate judge cannot decide a suppression issue; instead, the magistrate judge makes recommendations to the district court, which must adopt or reject them. If an objection is made or if the court exercises its authority to conduct a review without a written objection, see *Thomas v. Arn*, 474 U.S. 140, 154 (1985), the district court's review is *de novo*. The situation would be different if the magistrate judge had addressed more than one issue. In that kind of case, a more specific objection is necessary to alert the district court to the finding or findings the objecting party wishes to challenge. In those circumstances, a general

objection may well constitute at least a forfeiture, if not a waiver. In this case, however, there could have been no doubt that Charles was contesting the finding that his confession had been voluntary. This is not to say, of course, that there was no room for improvement as a matter of trial strategy. Had counsel enabled Charles to object in a more useful way, both the lawyers and this court could have avoided this preliminary question.

It is also noteworthy that § 636(b)(1) does not require an objecting party to spell out its concerns in any detail. By contrast, for example, Federal Rule of Appellate Procedure 28(a)(9)(A) requires appellate briefs to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." If that were what § 636(b) said, then Charles's objection would certainly have been insufficient. But it is not. Charles neither waived nor forfeited his right to challenge the district court's finding of voluntariness.

On the merits, we must consider whether Charles's statements were rendered involuntary as a result of Kurowski's alleged promise that the district attorney would give him favorable treatment, when that treatment was not forthcoming. "A confession is voluntary if in light of the totality of circumstances, it was not secured through psychological and physical intimidation but rather was the product of a rational intellect and a free will." *United States v. Ceballos*, 302 F.3d 679, 694 (7th Cir. 2002) (internal quotation marks omitted). Such circumstances include "whether the defendant was read his *Miranda* rights, the defendant's age, the duration and nature of the questioning, and whether the defendant was punished physically." *Id.* None of those problems appeared in Charles's case. "Trickery, deceit, even impersonation do not render a confession inadmissible . . . unless government agents make threats or promises."

*United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001). See *Ceballos*, 302 F.3d at 694-95 ("In fact, we have held that a law-enforcement agent may 'actively mislead' a defendant in order to obtain a confession, so long as a rational decision remains possible." (citing *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990))). "Confessions or other admissions obtained in the course of an interrogation are deemed involuntary and therefore inadmissible only if they are procured by threats or promises." *Kontny*, 238 F.3d at 817. Only if circumstances "demonstrate that police coercion or overreaching overbore the accused's will and caused the confession" is an incriminating statement involuntary. *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004). But promises—particularly honest ones such as Kurowski's—to bring cooperation by the defendant to the attention of prosecutors do not render a confession involuntary. See *United States v. Dillon*, 150 F.3d 754, 758 (7th Cir. 1998); *United States v. Westbrook*, 125 F.3d 996, 1005-06 (7th Cir. 1997).

In the end, Charles experienced one of the inevitable consequences of our federal system. Acting in good faith after his arrest, he apparently cooperated with the police, but he saw that goodwill with the state prosecutor turn to naught when the federal authorities took over the case. That move raised the stakes for Charles considerably: in federal court he faced a mandatory minimum sentence of 10 years in prison. Nevertheless, we cannot say that Charles's statements to Kurowski were involuntary. Under the case law, promises to seek favorable consideration from the prosecutor do not undermine the voluntariness of a confession. Although Charles draws an analogy between his situation and that in *Santobello v. New York*, 404 U.S. 257, 262 (1971), which requires the government to live up to its plea bargains, the two settings differ importantly. The problem for Charles is precisely that he had no formal plea agreement to which he could

hold the government. He had only Kurowski's promise that he would seek consideration from the district attorney. Kurowski intended to follow through and had no way of knowing that Charles would be indicted federally. The circumstances at the time of the statement determine whether it was voluntary, not where the case was later prosecuted. Charles was arrested with significant evidence of drug dealing, he was given *Miranda* warnings, and he made the statements in a casual conversation with Kurowski that lasted less than 45 minutes. This is not an involuntary confession.

### III

We AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                    _____

                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*