In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1263

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER VILLALPANDO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08 CR 98—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JUNE 4, 2009—DECIDED DECEMBER 16, 2009

Before FLAUM, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Christopher Villalpando pleaded guilty to one count of possessing cocaine with intent to distribute and was sentenced to 70 months in prison. In his plea agreement, he reserved the right to appeal the denial of a motion he filed to suppress incriminating statements he gave to the police after he was arrested. These statements led to the search of his apartment that turned up the aforementioned cocaine. We agree with the

district court that the statements were voluntary and therefore affirm Villalpando's conviction.

## I. Background

Christopher Villalpando, at the time a 21-year-old college student on probation for Wisconsin state drug convictions, was stopped by police after leaving his home and consented to the search of his SUV. In the vehicle, police found 3.6 grams of marijuana. At this point, Villalpando faced a dilemma. If the presence of the drugs in his vehicle were reported to his probation officer, Villalpando could be subject to a probation hold, put back in jail and unable to return to school. Similarly, if he were locked up on the marijuana charge, he would be forced to miss school (and his detention would come to the attention of his probation officer). Denise Markham, a Madison detective, interrogated Villalpando in her squad car, after reading his rights and reminding him of these potential problems.

After going over Villalpando's potential probation difficulties, Detective Markham indicated that she would try and use her influence on the district attorney and Villalpando's probation officer to work out a situation where they would offer leniency in return for Villalpando's help. After Villalpando equivocated, Markham continued to ask for his help, repeatedly explaining that she would intercede on his behalf and maintaining that her interest was in another guy (presumably Villalpando's supplier). The police were not interested in the marijuana

in Villalpando's car; instead they were interested in his cocaine sales.

Ultimately, Villalpando made a series of admissions—that there was marijuana in his apartment, that there was money and a pistol in a safe in the apartment, and finally that there were 9 ounces of cocaine in the apartment. The police used this information to get a search warrant for the apartment and Villalpando pleaded guilty to possessing the cocaine found within. Villalpando filed a motion to suppress the evidence, arguing that his admissions were involuntary because they were induced by Detective Markham's false promises, and therefore that the evidence found in his house was the fruit of the involuntary admissions. The magistrate judge's report (adopted by the district court) found his statements to be voluntary and denied the motion. Villalpando then entered a conditional guilty plea that preserved his right to appeal the denial of his motion to suppress. He asks us to find his statements involuntary and remand the case to the district court to order the suppression of his inculpatory statements and the search warrant they supported.

## II.  Standard of Review

We review the denial of a motion to suppress under a dual standard. We review all factual determinations for clear error, with special deference to the district court's credibility determinations. We review conclusions of law de novo. *United States v. Montgomery*, 555 F.3d 623, 629 (7th Cir.), *cert. denied*, 129 S. Ct. 2413 (2009).

Villalpando argues that we should review the facts here de novo since there was no evidentiary hearing below and we, like the district court, have the entire transcript of the interview forming the basis of his claim. The government counters that the district court made inferences from the transcript and that these are entitled to our deference. The Supreme Court has held in similar circumstances that the deferential standard of review afforded to a trial court's finding of fact is not based solely on the trial court's superior ability to evaluate live witnesses but also on concerns of judicial economy. "The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574-75 (1985); *see also Ginsu Prods., Inc. v. Dart Indus., Inc.*, 786 F.2d 260, 263 (7th Cir. 1986) ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.") (citations and emphases omitted).

Whether a statement is voluntary is a matter of law. *Montgomery*, 555 F.3d at 629. We judge, however, the voluntariness of a confession under the totality of the

circumstances, *id.*, which of course means that we consider whether the underlying facts as found by the trial court support the conclusion that the confession was voluntary, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). (While the Court in *Schneckloth* characterized the conclusion we should draw as a factual one, we recognized in *United States v. D.F.*, 115 F.3d 413, 419 (7th Cir. 1997) that the Supreme Court's decision in *Ornelas v. United States*, 517 U.S. 690 (1996), mandated that we treat voluntariness as a matter of law mandating de novo review.)

Accordingly, the defendant's argument for a de novo construction of the facts appears to be foreclosed by both Supreme Court precedent and our previous cases. As we proceed through the analysis, however, we will see that the district court's factual findings are unchallenged, while the legal conclusions drawn from them are well-supported. In other words, the standard of review we employ has no effect on the outcome of this case.

### III. Analysis

An incriminating statement is voluntary if it is "the product of rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998). Villalpando alleges that his free will was overcome by the interrogating detective's offer of deceptive promises of leniency. To date, our cases

dealing with this issue have generally imagined the hypothetical circumstance where a false promise would make a confession involuntary even as we found that such a circumstance did not exist in the case at issue. *See, e.g., United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001); *Sprosty v. Buchler*, 79 F.3d 635, 646-47 (7th Cir. 1997); *United States v. Baldwin*, 60 F.3d 363, 365 (7th Cir. 1995), *vacated and remanded on other grounds*, 517 U.S. 1231 (1996); *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990). In these cases, we made clear that while a false promise of leniency may render a statement involuntary, police tactics short of the false promise are usually permissible. "Trickery, deceit, even impersonation do not render a confession inadmissible . . . unless government agents make threats or promises." *Kontny*, 238 F.3d at 817. In a situation similar to Villalpando's we found that a confession induced by a promise "to bring cooperation by the defendant to the attention of prosecutors [did] not render a confession involuntary." *United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007). So, for Villalpando to succeed here, he has to establish that his interrogator made him a promise that was materially false and thus sufficient to overbear his free will. *See Montgomery*, 555 F.3d at 630 (collecting cases and noting that not every false promise constitutes coercion).

The reason we treat a false promise differently than other somewhat deceptive police tactics (such as cajoling and duplicity) is that a false promise has the unique potential to make a decision to speak irrational and the resulting confession unreliable. Police conduct that influences a rational person who is innocent to view a false

confession as more beneficial than being honest is necessarily coercive, because of the way it realigns a suspect's incentives during interrogation. "An empty prosecutorial promise could prevent a suspect from making a rational choice by distorting the alternatives among which the person under interrogation is being asked to choose." *Id.* at 629 (quoting *Sprosty*, 79 F.3d at 646). The ultimate result of a coercive interrogation is unreliable.

So, our task is to examine whether Villalpando was not able to make a rational decision due to promises made by the interrogating detective. As noted, we review Villalpando's decision to speak by considering the "totality of the circumstances," including "whether the defendant was read his *Miranda* rights, the defendant's age, the duration and nature of the questioning, and whether the defendant was punished physically." *Charles*, 476 F.3d at 497. The burden is on the government to prove the voluntariness of Villalpando's statements by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Church*, 970 F.2d 401, 404 (7th Cir. 1992). The evidence the government offers is the entire transcript of the interview.

Villalpando's claim is simple. He claims that the investigating detective offered to keep him out of jail in exchange for his cooperation. This is true—but only to a limited extent. Unfortunately for Villalpando, the devil is in the details. Villalpando argues that cooperation meant simply revealing the presence of cocaine in his house, but it is clear from the transcript that the conversation between Villalpando and Detective Markham

concerned his future cooperation with the investigation of his supplier. It was in the context of negotiating this future cooperation that Villalpando chose to come clean about what was in his apartment.

Our conclusion that the conversation was a negotiation matches the findings of the district court. The district court noted Villalpando's familiarity with the criminal justice system, the fact that he was not physically threatened, and the first-name basis he was on with the detective and considered the full circumstances as demonstrating that Villalpando was negotiating with the police. (The conversation between the detective and the defendant was remarkably relaxed, with both of them addressing each other by their first names throughout.) We agree and find that his choice to reveal the cocaine in his safe was rationally made within the context of these negotiations.

Of course the scales in the negotiation weren't evenly balanced. As Vilalpando himself noted during the interrogation, the police had leverage over him and were seeking more. But, as the district court found, Villalpando was looking for the best deal he could get, knowing that he was facing potential jail time for the marijuana violation. The explicit promises offered by the detective were these: she would try to persuade the probation officer not to revoke his probation and she would not arrest him that night if he cooperated with the investigation against the unnamed target.

Thus, the actual promises made during the interview belie Villalpando's contention that he struck a bargain

with the detective that would secure his release in return for information about his own drug possession. The conversation reveals that the detective sought a more extensive cooperation from Villalpando and reveals that her promises in regard to that cooperation were less than solid. She offered, for instance "to go to bat" for Villalpando and indicated that she would "sit down" with the DEA, the police, and his probation officer to "work this out." She indicated that "we don't have to charge you." None of these, standing alone or in the context of the interview, represented a solid offer of leniency in return solely for his admission to cocaine possession.

Furthermore, the detective's statements that Villalpando challenges are merely offers of her help, not the help of the district attorney, the police, or Villalpando's PO. (For example, "I'm going to go to bat for you tonight.") Villalpando himself recognized that she was not offering him anything specific beyond her efforts to intervene on his behalf, saying toward the end of the interview, "But the whole point is, Denise, that what you're basically telling me is that like—is you don't know for sure if I'm not going to be able to go to jail," and earlier that "you're not telling me that I'm not going to jail, you're just telling me that you're going to work at it." It is far different to offer to intercede on someone's behalf than to promise that such an intercession will be effective (which she did not do). Villalpando also alleges that Markham's statement that he would "see how I uphold my end of the bargain" is evidence that she had made promises to Villalpando, promises that she would not keep. But as we noted, the bargain to which Detective Markham

repeatedly alludes is one in which Villalpando offers continued help to the police, not simply revealing the presence of cocaine in his home.

Finally, Villalpando argues that the detective offered to use her pull with the DA to make things easier for him. Whether or not she did so, *Charles* appears to foreclose that argument even if we accept, *arguendo*, that Markham promised Villalpando the DA's leniency. In *Charles*, we considered an identical argument and rejected it, finding that the defendant "apparently cooperated with the police, but he saw that goodwill with the state prosecutor turn to naught when the federal authorities took over the case." 476 F.3d at 497. The record before us is silent on how this became a federal case, but *Charles* makes clear that "promises to seek favorable consideration from the prosecutor do not undermine the voluntariness of a confession." *Id.* at 498. "The circumstances at the time of the statement determine whether it was voluntary, not where the case was later prosecuted." *Id.* Here, the evidence shows that at the time of Villalpando's interrogation the detective honestly sought to exploit him as an informant; Villalpando does not argue that he made a deal to inform for the police and that they later reneged on the deal.

## IV. Conclusion

Villalpando was in trouble as soon as the police discovered the marijuana in his vehicle. The interrogating detective offered to help him, but her offer of help did not amount to a false promise of leniency. In light of the

totality of the circumstances, the statements were voluntary and the district court's decision is AFFIRMED.