ALEXANDER, J.,
with whom SAUFLEY, C.J., and GORMAN, J., join, dissenting.
[¶ 32] The Court has erred in two respects in vacating Wiley’s conviction. First, rather than apply our standard of deferential appellate review, it has reached its conclusion as if it were the fact-finder in the first instance, and it has failed to acknowledge the trial court’s superior vantage point in considering those facts. Second, in overriding the trial court’s finding that Wiley’s confession was voluntary, the Court has failed to focus on the critical aspect of the analysis — Wiley’s state of mind-and it has instead focused on the officer’s statements.[7] Accordingly, I must respectfully dissent.
A. Precedent on Standard of Review
[¶ 33] In its opinion, the Court has missed the critical point of a voluntariness analysis by focusing on the actions of the officer rather than the effect of those actions on the defendant. There is no question that the burden rests with the State to *761 prove voluntariness of confessions beyond a reasonable doubt. See State v. Lavoie, 2010 ME 76, ¶ 18, 1 A.3d 408; State v. McCarthy, 2008 ME 40, ¶ 12, 819 A.2d 335; State v. Coombs, 1998 ME 1, ¶ 10, 704 A.2d 387. The trial court may find a defendant’s statements voluntary if it finds that the statement is the result of the defendant’s “own free will and rational intellect ... as opposed to one that results from threats, promises or inducements made to the defendant.” McCarthy, 2003 ME 40, ¶ 12, 819 A.2d 335 (quoting State v. Sawyer, 2001 ME 88, ¶ 9, 772 A.2d 1173); see also State v. Rees, 2000 ME 55, ¶ 8, 748 A.2d 976.
[¶ 34] We have regularly affirmed, as recently as three years ago, trial court findings that statements were voluntary, despite evidence of police statements during interviews that could be construed as promises of more lenient treatment or other inducements in return for confessions. See Lavoie, 2010 ME 76, ¶¶ 18-21, 1 A.3d 408 (affirming trial court findings that statements that officers could help defendant get treatment for his alcohol problem if he would “step up to the plate” and admit that he made a mistake did not render confession involuntary, although officers could not provide the promised treatment);[8] State v. Nadeau, 2010 ME 71, ¶57, 1 A.3d 445 (concluding that a police officer’s statement to the defendant that “the more cooperative you are, the better things are for you” was not a threat or promise of leniency (alteration omitted)); State v. Wood, 662 A.2d 908, 911 (Me.1995) (concluding that a confession was voluntary when detectives, after repeatedly disclaiming any authority over sentencing, assured the defendant that he was not in trouble for possessing a handgun used in a murder); State v. Hutchinson, 597 A.2d 1344, 1346 (Me.1991) (concluding that even if a police officer’s statement to a defendant that telling the truth would “clear things up” constituted an implied promise, the confession was voluntary because the defendant “clearly considered whether speaking would be in his best interest, but he was simply wrong in his conclusion”).
[¶ 35] We affirmed these voluntariness findings because our focus was on the defendant’s state of mind, looking to evidence of exercise of the defendant’s “own free will and rational intellect,” rather than a focus on particular police statements. In most of the state and federal cases cited in this opinion, the promises or inducements at issue could not have been implemented by the officers making the statements because the officers lacked prosecutorial or other authority necessary to implement the promise or inducement. The officers’ lack of authority did not render the confession following the promise or inducement per se involuntary, as in each instance the appellate court looked at the defendant’s state of mind motivating the confession, not the content of the police statements inviting the confession. See Lavoie, 2010 ME 76, ¶ 21, 1 A.3d 408; United States v. *762 Villalpando, 588 F.3d 1124, 1127-28 (7th Cir.2009).
[¶ 36] The standard of review we have applied to trial court findings regarding promises and inducements has been consistent with that applied by other appellate courts. The United States Supreme Court has stated that, in evaluating confessions for voluntariness, no single fact should be determinative; instead a court should consider factors such as (1) police coercion, (2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) the suspect’s maturity, (6) the suspect’s education, (7) the suspect’s physical condition and mental health, and (8) whether the suspect was advised of Miranda rights. Withrow v. Williams, 507 U.S. 680, 693-94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). As is clear from that list, the court’s focus must be on the effect of the officer’s alleged inducements on the defendant himself, not on how the officer’s statements may be perceived by the reviewing court.
[¶ 37] Thus, we review the record to determine whether the motion court’s assessment of the defendant’s state of mind is supported by that record. Appellate review of trial court voluntariness findings is deferential and fact-based, pursuant to the clear error standard of review. Lavoie, 2010 ME 76, ¶¶ 13, 18-22, 1 A.3d 408. In United States v. Hughes, the First Circuit articulated the standard of review as follows:
Under clear error review, we may reverse only if the record, read as a whole, gives rise to a strong, unyielding belief that a mistake has been made. This deferential standard of review portends that when the district court chooses to draw a reasonable (though not inevitable) inference from a particular combination of facts, that inference is entitled to respect. Thus, [i]f any reasonable view of the evidence supports the denial of a motion to suppress, we will affirm the denial.
640 F.3d 428, 434 (1st Cir.2011) (citations and quotation marks omitted).
[¶ 38] The First Circuit also emphasized that the record must be reviewed considering the “totality of the circumstances.” Id. at 438.
[¶ 39] Rejecting an argument that it should review voluntariness findings de novo because it, like the district court, had a complete transcript of the interview in which the allegedly false promises were made, the Seventh Circuit in Villalpando, observed: “Whether a statement is voluntary is a matter of law. We judge, however, the voluntariness of a confession under the totality of the circumstances, which of course means that we consider whether the underlying facts as found by the trial court support the conclusion that the confession was voluntary.” 588 F.3d at 1127 (citations omitted).[9]
[¶ 40] The Seventh Circuit then proceeded to describe its deferential standard of review on promises and inducements issues as follows:
while a false promise of leniency may render a statement involuntary, police tactics short of the false promise are *763 usually permissible. ‘Trickery, deceit, even impersonation do not render a confession inadmissible ... unless government agents make threats or promises.’ ... So, for [the defendant] to succeed here, he has to establish that his interrogator made him a promise that was materially false and thus sufficient to overbear his free will.... The reason we treat a false promise differently than other somewhat deceptive police tactics (such as cajoling and duplicity) is that a false promise has the unique potential to make a decision to speak irrational and the resulting confession unreliable.
Id. at 1128 (citations omitted) (referencing United States v. Montgomery, 555 F.3d 623, 630 (7th Cir.2009) (collecting cases and noting that not every false promise constitutes coercion)).
[¶ 41] Addressing its criteria for review of voluntariness issues, the Sixth Circuit, in United States v. Stokes, articulated “three requirements for finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant’s will; (iii) and the alleged police misconduct was the crucial motivating factor in the defendant’s decision to offer the statement.” 631 F.3d 802, 808 (6th Cir.2011); see also United States v. Delaney, 443 Fed.Appx. 122, 128 (6th Cir.2011) (same). The Fifth Circuit has held that “the defendant must establish a causal link between the coercive conduct and the confession.” United States v. Turner, 674 F.3d 420, 433 (5th Cir.2012).
[¶ 42] Applying its review criteria to identify those promises and inducements that can be coercive, the Sixth Circuit has held that:
in certain circumstances, [p]olice promises of leniency and threats of prosecution can be objectively coercive. Generally, however, promises of leniency are coercive only if they are broken or illusory, and promises to recommend leniency or speculation that cooperation will have a positive effect do not make subsequent statements involuntary.
United States v. Montgomery, 491 Fed.Appx. 683, 687 (6th Cir.2012) (citations and quotation marks omitted).
[¶43] These precedents establish that the following principles guide our appellate review of trial court findings that a confession was voluntary when promises or inducements are at issue:
1. The record will be reviewed deferentially and most favorably to the trial court’s findings.
2. When the trial court draws a reasonable (though not inevitable) inference from a particular combination of facts, that inference is entitled to deference.
3. The inquiry looks at the totality of the circumstances leading to the confession, with a focus on the defendant’s state of mind in making the statements, not on any particular statements made by investigators.
4. Promises of leniency in return for cooperation and confession, and even some deception and cajoling, may be part of acceptable investigatory techniques, but false, illusory, or broken promises of leniency constitute improper coercion that may render a confession involuntary and subject to suppression.
5. If there is improper coercion in an investigation leading to a confession, that improper coercion must be a critical motivating factor or cause for the confession to render the confession involuntary and subject to exclusion.
B. Application of Established Standards of Review to Facts of this Appeal
[¶ 44] Applying these standards to the facts here is illustrative. William Wiley *764 was a long-time elementary school music teacher. In that profession, Wiley was certainly well aware of the severe consequences that befall teachers and other adults who sexually abuse young children. Despite this knowledge, during the first half of 2004, Wiley repeatedly sexually abused his then-twelve-year-old stepdaughter. The abuse included numerous incidents of Wiley digitally penetrating the girl’s genitals and forcing her to touch his genitals.
[¶ 45] After the abuse ended, Wiley, the victim, Wiley’s wife, and his young son continued to live together for nearly five years. Wiley continued in his employment as a music teacher. He may have assumed that his sexual misconduct with his stepdaughter was behind him and in the past.
[¶ 46] In April 2009, Wiley’s stepdaughter, then eighteen years old, reported Wiley’s sexual abuse to a detective of the Waldo County Sheriffs Department. After interviewing the victim, the detective went to Wiley’s residence in the early afternoon to discuss the victim’s allegations with him. The detective did not disclose the subject matter of the investigation. Rather than discuss the matter at home, Wiley elected to ride with the detective in his unmarked cruiser to the sheriffs department to answer questions.
[¶ 47] Upon arrival at the sheriffs department, the detective took Wiley upstairs to an interview room as discussed in the Court’s opinion. The detective then informed Wiley that he knew that Wiley had sexually abused his stepdaughter. Wiley initially denied any sexual impropriety with the victim. The video of the interview indicates that Wiley then started crying and breathing heavily. He began making statements such as “I see my life being over now,” “this is my life you’re holding,” and “my life is over now.”
[¶ 48] The detective responded to one of Wiley’s “life is over now” statements by saying “it’s not over, but it’s gonna be, you’re gonna have a difficult road ahead of you, yes, but you still have a son that loves you and you’ve still got a family that loves you. And you have their support.” The detective then indicated that Wiley could lose his family’s support “if you sit here and adamantly deny the things that we know you did.” The detective repeatedly stated to Wiley that “[he] need[ed] to do the right thing” for his family by “standing up” and admitting that he had sexual contact with the victim.
[¶ 49] Approximately forty minutes into the interview, Wiley raised the prospect of his going to jail for his actions: “[i]n your eyes, either way ... I’m going to jail or something.” The detective continued to urge Wiley to describe what he had done. Wiley, whom the trial court could have inferred feared severe consequences for acts that he thought were in the past but had now come back to haunt him, responded “as soon as I hit any kind of jail, with that label, I’m dead.” The detective then told Wiley that, as he had no prior criminal record, admitting he had sexual contact with the victim “doesn’t mean you’re gonna get sent to the big house and go to this big jail and have this awful label.... Does it mean that you may have a little bit of jail time here in Waldo County? Yeah, probably it does. Does it mean that you may have a bunch of probation over your head? Yeah, probably. But it still means that you’ve got a life and you can still be a father to your son.”
[¶ 50] The detective informed Wiley that he had two options: he could “own up” to his mistake and serve his sentence in county jail, or he could refuse to disclose the sexual contact with the victim and serve his sentence in state prison. The detective explained, “That gavel is gonna *765 slam down a lot harder than what it’s gonna be when you stand up and you are truthful through this whole thing.” The detective further urged Wiley to confess in order to avoid putting his family through a public proceeding.
[¶ 51] The detective cautioned Wiley that the detective was not making any promises and that the court, not the detective, would ultimately decide any sentence: “I can tell you right now, I can’t promise, I can’t promise you anything because my job is just to, just to find the facts and let the judicial system sort it out from there.”
[¶ 52] Later in the interview, Wiley began to describe certain sexual contacts he had with the victim. At some points, Wiley admitted to or described certain acts with the victim. At other times, when asked about allegations made by the victim he responded with “whatever she says” or similar statements.
[¶ 58] As indicated in the Court’s opinion, the suppression court denied the motion to suppress. On the voluntariness issue, the court found that the State had proved beyond a reasonable doubt that Wiley’s statements were voluntary. In reaching that decision, the court noted, among other things, that Wiley was “very careful about the extent of any admissions he was willing to provide,” and that this “demonstrate[d] that [Wiley] was able to control his cognitive process and was able to make statements that he wanted to make.”
C. Analysis of Contested Issues
[¶ 54] To invalidate what the trial court has found to be a voluntary confession, our standard of review requires that the record on appeal must establish, without the capacity for the trial court to conclude otherwise, that a promise of leniency or other police coercion was the “motivating cause of the confession.” State v. Bragg, 604 A.2d 439, 440 (Me.1992); State v. Durost, 497 A.2d 134, 137-38 (Me.1985); Turner, 674 F.3d at 432-33 (defendant must establish a causal link between coercion and confession); Delaney, 443 Fed.Appx. at 128 (coercion must be the “crucial motivating factor” leading to confession).
[¶ 55] A causal link between coercion and confession has been occasionally found. See Lynumn v. Illinois, 372 U.S. 528, 532-34, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (finding that the defendant’s involuntary confession was motivated by the officers’ illusory promise that she would not lose custody of her children and welfare payments if she cooperated); State v. Tardiff, 374 A.2d 598, 601 (Me.1977) (finding that the defendant’s involuntary confession was motivated by the officer’s false promise to drop charges in exchange for his cooperation). But these findings of coercion were premised on false or illusory promises as addressed in the more recent precedent discussed above.
[¶ 56] Here, the record reflects that discussion regarding the possible jail sentence and violence in prison was initiated by Wiley. After Wiley expressed concern that “as soon as I hit any kind of jail, with that label, I’m dead,” the officer responded with the observations at issue on this appeal. Specifically, the officer stated that Wiley would not necessarily go to “the big house” and that, although Wiley would certainly serve some jail time and a long period of probation, he might avoid a long prison sentence if he admitted his acts and did not put the victim and his family through the ordeal of a trial.
[¶ 57] The officer’s statements regarding likely sentencing options were consistent with the law addressing sentencing of sexual abusers of children, as we articulated it in State v. Farnham, 479 A.2d 887, 889-893 (Me.1984) (approving the trial *766 court’s rejecting as mitigating factors defendant’s claims of reform, rehabilitation, remorse and concern for the victim and imposing a seven-year sentence when defendant had taken the case to trial, engaged in aggressive and demeaning cross-examination of the victim, and admitted his abuse of the victim and claimed to have reformed only after he had been found guilty). The officer’s statements were also reflective of the law applied in the federal courts where acceptance of responsibility for an offense and avoidance of trial can result in a two-level decrease in the offense level for any particular crime. U.S. Sentencing Guidelines Manual § 3El.l(a) (2012). Such a reduction is generally not available when a defendant denies guilt and puts the prosecution to its proof at trial. Id. § SEl.l(a) cmt. 2.
[¶ 58] Certainly the trial court could, and apparently did, infer that while the detective may have suggested or promised leniency in return for a confession, the promise of leniency was not false, illusory, or broken, the factors referenced in the case law that can render a suggestion or promise of leniency improper coercion. Accurately advising Wiley of choices he could make that could affect sentencing options did not, as a matter of law, constitute a prohibited promise of leniency. This record does not compel a conclusion that there was any coercive, improper promise of leniency that was the “crucial motivating factor” or causal link leading to Wiley’s confession.
[¶ 59] The suppression hearing record supports the trial court’s finding that the detective “did not engage in any conduct or invoke any techniques that would render the defendant’s statements involuntary. Thus, there was no state action undermining the defendant’s free will.” This statement would be a factual error only if one interprets this trial court finding, as the Court apparently does, to state that the detective did not make any promises or inducements or apply any techniques to secure Wiley’s confession. However, a fair interpretation of the trial court’s statement is that, although there were suggestions, even promises, of leniency if Wiley cooperated, those suggestions did not go beyond the bounds established by precedent for such investigatory questioning and, accordingly, were not improper conduct or techniques “that would render [Wiley’s] statements involuntary.”
[¶ 60] If the focus is on Wiley’s state of mind when he made his statements, and not on the words the officer used in discussion with Wiley, there is sufficient evidence in the record to support the trial court’s findings that: (1) the detective “did not engage in any conduct or invoke any techniques that would render the defendant’s statements involuntary,” (2) “there was no state action undermining the defendant’s free will,” and (3) the State proved beyond a reasonable doubt that Wiley’s incriminating statements to the detective were voluntary.
[¶ 61] Applying the standard of review applied to these questions in the past, and respecting precedent indicating that promises of leniency may become improper coercion as a matter of law only when the promises are false, illusory, or broken, I would affirm the motion court’s findings and the trial court’s judgment.

. Unlike the question presented in certain other suppression hearings, regarding the determination that the officer had a reasonable articulable suspicion of illegal or unsafe activity that is based on what a generic, reasonable officer would have understood, State v. LaForge, 2012 ME 65, ¶ 8, 43 A.3d 961, the decision regarding voluntariness requires an individualized assessment of the defendant’s state of mind in the context of the officer’s actions and conduct. Thus, a more deferential review of the trial court’s analysis is called for.

. The Court’s opinion suggests that State v. Lavoie supports vacating the trial court's findings here, asserting that Lavoie held that a confession motivated by a promise of leniency by a person with no more than apparent authority to execute the promise, or without actual authority to guarantee such a promise, is per se involuntary. The Court’s reliance on Lavoie is misplaced. Lavoie affirmed a finding that a confession was voluntary, despite promises of assistance in receiving substance abuse treatment, by officers without authority to guarantee the promise, holding that, as here, the trial court properly focused on the defendant’s state of mind motivating the confession, not the police promise that immediately preceded the confession. 2010 ME 76, ¶21, 1 A.3d 408. The Lavoie opinion also observed that a promise of leniency was not an issue in that case. Id.

. To support this proposition the Seventh Circuit cited the United States Supreme Court’s observation in Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574-75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), that, “The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources.”