# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1991

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RUBY PARKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cr-00336-1—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED APRIL 4, 2013—DECIDED MAY 23, 2013

Before MANION, TINDER, and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.*   Ruby Parker, a former teller at LaSalle Bank, N.A., in Chicago, Illinois, was charged with and convicted of three counts of bank fraud, 18 U.S.C. § 1344, and one count of embezzlement by a bank employee, 18 U.S.C. § 656. She was sentenced to 30 months' imprisonment. Parker now appeals her conviction and sentence. She claims a statutory speedy trial violation, challenges the sufficiency of the evidence

and evidentiary rulings, and argues that the court erred in applying a sentencing enhancement for obstruction of justice. We affirm the convictions but vacate the sentence and remand the case for resentencing.

## I. Background

In 2004, Parker was employed as a part-time teller at the Gateway Branch of LaSalle Bank, in Chicago, Illinois. In or around March 2004, her supervisor assigned to her the task of reconciling the branch's temporary checks to the temporary check issuance forms. Temporary checks were blank checks that LaSalle Bank kept behind the teller counter for customer use. Parker disregarded her supervisor's instructions, however, knowing that no one at the branch was monitoring the checks. A federal investigation into a March 2006 robbery at the Gateway Branch led to the allegation that Parker stole eight temporary checks drawn on the accounts of four LaSalle Bank customers. The checks were then cashed. The eight checks totaled approximately $76,450; because some of the funds were returned, the actual loss to LaSalle Bank was approximately $49,890.

On April 27, 2010, Parker was charged in an indictment with bank fraud and embezzlement by a bank employee. Two days later, she appeared before the district court for her initial appearance and arraignment and pled not guilty. Over the next sixteen months, Parker was represented by four different appointed counsel and eventually proceeded *pro se*. On February 16,

2011, the district court ordered a competency evalua-tion of Parker. In June 2011, although she was repre-sented by counsel, Parker filed a *pro se* motion to dismiss the indictment on several grounds, including an alleged speedy trial violation. On September 1, 2011, the district court denied her motion to dismiss. Various other pretrial motions were filed over the course of the proceedings, and several trial continuances were re-quested and granted. On November 7, 2011, more than eighteen months after her arraignment, Parker's jury trial commenced.

At trial, the government presented evidence, in-cluding the testimony of co-schemer Travis Olivera, that in September 2004, Parker approached Olivera about a check-cashing scheme. She told him that she would provide him with checks to cash and split the proceeds of the checks between Olivera, herself, and the persons Olivera recruited to cash the checks. Parker provided Olivera with eight temporary checks she had stolen from her employer, LaSalle Bank. Olivera in turn pro-vided the checks to others ("runners") he had recruited to deposit the checks into their own bank accounts and then withdraw the proceeds. Olivera gave one-third of the proceeds to the runners and split the remainder with Parker. The evidence established that in Septem-ber and October 2004, LaSalle Bank was insured by the Federal Deposit Insurance Corporation ("FDIC").

The evidence also supported a finding that in Septem-ber and October 2004, Parker was an employee of LaSalle Bank and obtained the eight temporary checks

through her employment. Olivera arranged for the checks to be cashed in the total amount of $76,450. Photographs and bank records showed that Parker accessed three of the four victim customer accounts close in time to when the checks were written on the victims' LaSalle Bank accounts. Parker's actions, including her agreement to split the proceeds with Olivera and others, supported a finding of intent to defraud LaSalle Bank.

Parker testified at trial and denied having any involvement in the check-cashing scheme, specifically denying that she took any of the eight checks at issue. The jury convicted Parker on all counts. The court sentenced her to 30 months' imprisonment, which included an enhancement for obstruction of justice. Parker appeals her conviction and sentence.

## II. Discussion

### A. Speedy Trial Act

Parker first argues that her right to a speedy trial under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, was violated. (She does not argue a Sixth Amendment violation.) Specifically, Parker maintains that the district court erred in its statutory findings for several delays and wrongly excluded those delays after the time for excluding them had passed. A review of the proceedings from indictment until trial relevant to the speedy trial issue sets the context for our discussion.

As noted, on April 29, 2010, Parker had her initial appearance and was arraigned, which started the

speedy trial clock. The district court set a June 1, 2010 deadline for filing pretrial motions, set a status hearing for June 7, 2010, and excluded the period of delay pursuant to 18 U.S.C. § 3161(h)(1)(D). Attorney Daniel McLaughlin was appointed defense counsel. Parker sought an extension of time within which to file pretrial motions, and at the June 7 status hearing, her motion was granted and the court set a status hearing for July 13, 2010, excluding the time pursuant to § 3161(h)(1)(D). Then on July 12, 2010, Attorney McLaughlin moved to withdraw as counsel for Parker based on a conflict of interest. The next day the court granted the motion and set a status hearing for August 3, 2010, excluding the time pursuant to § 3161(h)(1)(D). On August 3, new counsel, Linda Amdur, entered an appearance for Parker. At the August 3 status hearing, the court extended the deadline for filing pretrial motions and set a status hearing for September 16, 2010, excluding the time pursuant to § 3161(h)(1)(D).

On September 14, 2010, Parker's counsel filed seven pretrial motions. At the September 16 status conference, the court set deadlines for additional pretrial motions and the government's disclosures, and scheduled a jury trial for February 14, 2011. The court also set a status hearing for November 10, 2010, excluding the time pursuant to § 3161(h)(1)(D). At the arraignment and the first three status hearings, the court did not state its specific reasons for excluding the time. In its September 1, 2011 ruling on Parker's motion to dismiss, however, the district court provided its specific reasons for excluding the periods of time following the four hearings on

April 29, June 7, August 3, and September 16: for purposes of continuity of counsel and effective preparation, citing § 3161(h)(7)(A) and (B)(iv). The court also found that the ends of justice were served by giving defense counsel the opportunity to prepare and that the need for such an opportunity outweighed the interests of the public and the defendant in a speedy trial.

At the November 10 status hearing, Parker orally moved to proceed *pro se*. At the request of defense counsel, the status hearing was continued to November 17, 2010, and again continued to December 15, 2010, to allow Parker time to consider her request to proceed *pro se* and consult with her attorney. The court ordered the time excluded in the interest of justice and for continuity of counsel under § 3161(h)(7)(A) and (B). The status hearing was later reset for December 13, 2010.

At the December 13 status hearing, the court found that Parker could not represent herself because she claimed that she did not understand the nature of the charges. The court granted Attorney Amdur's leave to withdraw, advised Parker that it would appoint another lawyer for her, and continued the status hearing until January 5, 2011. The court found that the ends of justice supported the exclusion of time for continuity of counsel pursuant to § 3161(h)(7)(A) and (B).

On January 3, 2011, Attorney Douglas J. Rathe, anticipating appointment as Parker's counsel, requested a continuance of trial, indicating that he had not yet contacted Parker and that given the volume of discovery, he was seeking a continuance to determine if there were any

defenses that could be raised. He also said that a continuance would allow him and Parker to meet on a number of occasions to determine the best course of action. At the hearing on January 5, 2011, the court did appoint Attorney Rathe to represent Parker. The court granted the motion to continue trial and excluded the time for continuity of counsel.

On January 13, 2011, Attorney Rathe moved to withdraw as Parker's attorney because of a conflict of interest. At the status hearing that same date, the court granted the motion and appointed Attorney John Kennedy as counsel for Parker. The court set a status hearing for February 3, 2011, and excluded the time for continuity of counsel pursuant to § 3161(h)(7)(A) and (B). Then at the February 3 status hearing, the court continued the status hearing to February 16, 2011, at the implicit request of defense counsel. (The transcript shows that defense counsel stated he had met with Parker but they needed to talk more.) The minute entry for February 3 indicates that time was excluded pursuant to § 3161(h)(7)(A) and (B). The transcript of the hearing reveals that the reason for the ends of justice finding was continuity of counsel.

On February 16, the court ordered an evaluation of Parker's competence and set a hearing for February 24, 2011, excluding the time pursuant to § 3161(h)(1)(A). The period of delay was automatically excluded until the court's determination of Parker's competency, which was made on September 1, 2011. At status hearings between those dates, the court also ex-

cluded time for other reasons, including for consideration of motions and pretrial preparation. On June 3, 2011, Parker filed a *pro se* motion to dismiss, alleging a speedy trial violation. On June 6, 2011, the court ordered the government to respond in fourteen days, and allowed Parker to reply seven days thereafter. The court ordered the time excluded pursuant to § 3161(h)(1)(A). In addition, on July 1, 2011, Parker filed a motion to continue the July 15, 2011 trial date, asserting that additional time was needed for trial preparation. The court granted the motion, indicating that because the continuance was requested to permit counsel to interview witnesses and Parker's own *pro se* motion remained pending, the time was excluded. The minute entry states that the time was excluded pursuant to § 3161(h)(7)(A) and (B).

On September 1, 2011, the district court denied Parker's motion to dismiss and gave explicit reasons for its findings that the ends of justice supported the exclusion of time on April 29, 2010, June 7, 2010, August 3, 2010, and September 16, 2010. The court wrote that "the ends of justice supported the exclusion of time beginning on April 20, 2010 because defense counsel was appointed for the first time at or near that date and had not yet had the opportunity to prepare. Indeed, Mr. McLaughlin sought still more time when he appeared for status in June 2010." The court stated that after McLaughlin withdrew, newly appointed counsel "asked for additional time to review the file and prepare motions. The exclusion of time was in the interests of justice, the court explained, "to enable appointed counsel to prepare ade-

quately to represent the Defendant." The court also noted that as of September 16, 2010, counsel "had not yet had time to review the voluminous discovery or to consult effectively with her client" and concluded that the "ends of justice were served by giving counsel an effective opportunity to prepare a defense. The need for that opportunity outweighs the interests of the public and the defendant in a speedy trial." The court explicitly found that the periods of time following all four status hearings were excluded from the speedy trial calculation "for purposes of continuity of counsel and effective preparation," citing 18 U.S.C. § 3161(h)(7)(B)(iv). In its order, the court also concluded that Parker was mentally competent.

At the hearing, the court continued the status hearing until September 7, 2011, to allow Parker to decide whether she wanted to proceed *pro* se and set a jury trial for September 19, 2011. The government moved to exclude time due to the pendency of the pretrial motions, the interest of justice due to the complexity of the case, and for the filing of additional motions. The court stated on the record that it excluded the time until the next status conference in the interest of justice to give Parker an opportunity to decide whether she wants to make additional motions and for continuity of counsel. The minute entry for September 1 indicates that time was excluded pursuant to § 3161(h)(7)(A) and (B).

On September 7, 2011, the court granted Parker's request to proceed *pro se* and requested Attorney Kennedy to be standby counsel. The minute entry

indicates that time was excluded pursuant to § 3161(h)(7)(A) and (B), but the transcript does not show an ends of justice finding. Regardless, the government's motion in limine, which was filed on June 23, 2011, remained pending. And on September 9, 2011, Parker filed a motion to reconsider the court's denial of her motion to dismiss. That motion was denied on September 12, 2011.

At the September 15, 2011 final pretrial conference, Parker moved to continue the trial date, and the court set a status hearing on September 19, 2011, to allow Parker time to determine how much more time she needed for trial preparation. The court ordered the time excluded based on a finding that the ends of justice would be served by allowing Parker to provide further information in support of her motion to continue the trial pursuant to § 3161(h)(7)(A) and (B). On September 19, the court set the trial for November 7, 2011, concluding the time was excludable to allow for trial preparation pursuant to § 3161(h)(7)(A) and (B). Parker's jury trial began November 7, 2011.

"We review the district court's legal interpretations of the [Speedy Trial] Act de novo, and its decisions to exclude time for an abuse of discretion*." United States v. Wasson*, 679 F.3d 938, 943 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 1581 (2013). Absent a showing of legal error, "we will reverse the district court's decision to exclude time only where the defendant can show both an abuse of discretion and actual prejudice." *Id.* at 943-44.

The Act generally gives a defendant the right to a trial beginning within seventy days after she is charged or

makes an initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1); *United States v. Vallone*, 698 F.3d 416, 446 (7th Cir. 2012). However, the Act lists certain periods of delay that are excluded from the speedy trial calculation. 18 U.S.C. § 3161(h); *Vallone*, 698 F.3d at 446. Among them are "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from . . . any examinations[ ] to determine the mental competency . . . of the defendant," 18 U.S.C. § 3161(h)(1)(A), and "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," *id.* § 3161(h)(1)(D). In *Bloate v. United States*, 130 S. Ct. 1345 (2010), the Court held that this latter provision does not exclude a period of delay for *preparation* of pretrial motions; "such a delay" may be excluded only when a district court enters appropriate findings under subsection (h)(7)." *Id.* at 1352. "[P]eriods of delay excludable under § 3161(h)(1)-(6) may be *automatically* excluded if the specified conditions are present." *United States v. O'Connor*, 656 F.3d 630, 642 (7th Cir. 2011).

Furthermore, the Act excludes from the speedy trial calculation any "delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Act identifies several factors the court must consider in deciding whether to grant an "ends of justice" continuance. *Id.* § 3161(h)(7)(B); *see Vallone*, 698 F.3d at

446. And the Act also requires the court to "set[ ] forth, in the record of the case, either *orally* or in writing" its ends-of-justice findings. *Id.* § 3161(h)(7)(A) (emphasis added); *see also Zedner v. United States*, 547 U.S. 489, 506 (2006). However, "the court need not put its findings justifying such an exclusion in a written order, so long as the record otherwise makes clear the reasons why the court found that the ends of justice warranted the exclusion of time." *Vallone*, 698 F.3d at 449 (considering "the court's oral remarks in granting the continuances, and the context surrounding the continuances").

"Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance (the continuance can only be 'granted . . . on the basis of [the court's] findings'), the Act is ambiguous on precisely when those findings must be 'se[t] forth, in the record of the case.'" *Zedner*, 547 U.S. at 506-07. We have held that ends-of-justice findings need not be made contemporaneously on the record and concluded that *Zedner* supports our conclusion. *Wasson*, 679 F.3d at 945-46; *see also Zedner*, 547 U.S. at 507 ("at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)"). Instead, the court's reasons must be articulated by the time it rules on a defendant's motion to dismiss. *Wasson*, 679 F.3d at 946; *United States v. Henry*, 538 F.3d 300, 303-04 (7th Cir. 2008). Yet, we remind judges that "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *Zedner*, 547 U.S. at 507 n.7; *see also Wasson*, 679 F.3d at 946.

Parker acknowledges that a court's ends-of-justice findings need not be put on the record at the time the court grants the continuance. However, she argues that had the government not requested the court to make its findings on the record, this would be a different claim. She cites no authority or other reason to establish that this should matter. The government *did* request the court to make findings, and the court made explicit findings regarding the exclusions of time on April 29, 2010, June 7, 2010, August 3, 2010, and September 16, 2010, when it ruled on her motion to dismiss. Parker also argues that where the court makes its findings 12 to 16 months after the fact, it is not reasonable to conclude that, in her words, the "court conducted the mandatory balancing contemporaneously with the granting of the continuance," as *Zedner* requires. See *Zedner*, 547 U.S. 506-07. But she gives us no reason to second-guess the district court's findings in its September 1 order that it had made such findings contemporaneously. The record in this case, including the pretrial filings and transcripts of the pretrial status hearings, demonstrates that the court's explicit findings made when ruling on the motion to dismiss accurately represent its reasons for excluding the time when the court ordered the time excluded.

Next, Parker complains that in numerous instances, the district court ordered time excluded, but it failed to consider the factors that the Act provides should be considered in determining whether to grant a continuance under § 3161(h)(7)(A). 18 U.S.C. § 3161(h)(7)(B)(i)-(iv). These factors include: "Whether the failure to grant such

a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(ii). All of the challenged exclusions either are based on factors identified in § 3161(h)(7)(B)(ii)—whether continuity of counsel or the need for a reasonable time for effective preparation—or are exclusions for delay resulting from examinations to determine Parker's mental competency, or delay resulting from any pretrial motion from the filing of the motion through the disposition of such motion, which are automatically excluded.

As our discussion demonstrates, the record refutes any claim of a Speedy Trial Act violation.

### B. Sufficiency of the Evidence

Parker next challenges the sufficiency of the evidence on all counts. She was charged with and convicted of three counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of embezzlement by a bank employee in violation of 18 U.S.C. § 656. In challenging the sufficiency of the evidence, Parker faces "an extremely difficult burden." *United States v. Hosseini*, 679 F.3d 544, 557 (7th Cir.), *cert. denied*, 133 S. Ct. 623 (2012). We view "the evidence in the light most favorable to the Govern-

ment, defer[ ] to the credibility determination[s] of the jury, and overturn[ ] a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Collins*, 685 F.3d 651, 656 (7th Cir. 2012) (quoting *United States v. Huddleston,* 593 F.3d 596, 601 (7th Cir. 2010)) (alterations in *Collins*).

To prove bank fraud under § 1344 the government must establish that: (1) there was a scheme to defraud a financial institution; (2) the defendant knowingly executed or attempted to execute the scheme; (3) the defendant acted with the intent to defraud; and (4) the deposits of the financial institution were insured by the FDIC at the time of the charged offense. *See United States v. Colon-Rodriguez*, 696 F.3d 102, 106 (1st Cir. 2012); Pattern Criminal Jury Instructions of the Seventh Circuit 411 (2012 ed.). The elements of embezzlement by a bank employee in violation of § 656 are: (1) the defendant was an employee of a bank; (2) the bank was a federally insured bank; (3) the defendant used her position to embezzle the bank's funds; and (4) the defendant did so with the intent to injure or defraud the bank. *See, e.g.*, *Carlos-Blaza v. Holder*, 611 F.3d 583, 586 (9th Cir. 2010); *United States v. Crabtree*, 979 F.2d 1261, 1266 (7th Cir. 1992).

In challenging the sufficiency of the evidence, Parker's arguments miss the mark. She first complains that the evidence at trial failed to adequately explain how or why the temporary checks admitted into evidence were numbered, and she submits that every temporary check she ever handled was not numbered. Parker also chal-

lenges the grant of immunity given to Olivera. Finally, she complains that the government did not account for the money she should have obtained from the check-cashing scheme. Parker's arguments are directed at the weight to be given the evidence and the credibility of witnesses. Our task, however, is to determine whether the record contains any evidence which, when viewed most favorably to the government, could support a finding of guilt beyond a reasonable doubt. As Parker acknowledges, Olivera's testimony "truly inculpated her." In fact, the government presented evidence to establish the essential elements of bank fraud under § 1344 and the essential elements of embezzlement by a bank employee under § 656 beyond a reasonable doubt. Therefore, Parker's challenge to the sufficiency of the evidence fails.

### C. Ruling on Government's Motion in Limine

Parker claims that the district court abused its discretion in ruling on the government's motion in limine because the jury was not allowed to know all related facts surrounding her Equal Employment Opportunity Commission ("EEOC") action against LaSalle Bank, which she claims deprived her of a complete defense. We review a ruling excluding evidence under Rule 403 for an abuse of discretion. *See United States v. Taylor*, 701 F.3d 1166, 1172-73 (7th Cir. 2012).

On or about January 8, 2004, Parker filed a charge of discrimination against LaSalle Bank with the EEOC, alleging sexual harassment by a co-worker. The EEOC sent notice of the charge to LaSalle Bank and

subsequently notified the bank that it had found that Parker's claim was supported by probable cause. On February 2, 2005, Parker and LaSalle Bank entered into a settlement agreement pursuant to which Parker received $33,750 in exchange for her resignation and release of her EEOC charge against the bank. The bank waived all actions against Parker arising out of her employment based on Parker's "warranty and representation that she did not participate in the theft and fraudulent use of temporary checks from the Gateway Branch in 2004."

Before trial, the government moved in limine to preclude Parker from eliciting evidence or making argument related to her EEOC charge and any findings by the EEOC. The district court granted the motion in part, ruling that the EEOC findings were not independently admissible. The court also indicated that it would consider the use of the EEOC charge and findings for purposes of attempting to show that government witnesses were biased against Parker, based on a showing outside the presence of the jury, that the witnesses were aware of the charge.

At trial, the government called bank investigator Margie Szewczyk and teller manager Leslie Jones as witnesses. The district court conducted a *voir dire* examination of Szewczyk outside the jury's presence. Szewczyk said that near the end of her investigation, she became aware that Parker had a claim pending against the bank involving an HR (Human Resources) issue. Szewczyk also said that she did not know that the

claim involved the EEOC or a discrimination claim. Based on this testimony, the court ruled that Parker's counsel could cross-examine Szewczyk for bias on whether she was aware that Parker had a claim against the bank involving HR, but barred any reference to the EEOC.

Szewczyk testified on cross-examination that, a few days before she interviewed Parker in November 2004, she had learned Parker had filed a claim involving human resources against LaSalle Bank. Szewczyk stated that she was not given any details about Parker's claim; she was aware that there was some issue with HR, she believed it was a lawsuit and thought it involved discrimination.

The district court also examined Jones outside the jury's presence. Jones stated that, not long after she began working at the bank, in about March 2004, she learned through "talk . . . in the bank" of Parker's lawsuit against the bank and EEOC charge alleging harassment. Jones said that she learned the EEOC charge was resolved by settlement "months later," but she didn't know any of the details. Based on this testimony, the district court allowed Parker's counsel to cross-examine Jones for bias. Jones testified on cross-examination that, shortly after she began working at the bank, she heard that Parker had filed the EEOC charge against the bank for harassment.

Parker also offered testimony about her EEOC charge, stating that when she resigned from the bank she was on the payroll but not working "because of other issues

like retaliation and sexual harassment." The district court sustained the government's objection and then conducted a *voir dire* examination of Parker outside the jury's presence. Parker claimed that Szewczyk and Jones discussed the EEOC complaint with her. The district court ruled that Parker could testify about statements made by Szewczyk and Jones regarding the EEOC claim in an attempt to show bias.

Parker testified that on about November 18, 2004, she was interviewed by bank investigator Szewczyk and Szewczyk told her, regarding the EEOC charge, that "I was making everyone's job hard." Parker added that "[i]t was a lot of things said at a lot of different times. It was just a hostile situation." Parker also testified that in March or April 2004, Jones told her that:

> I was making everyone's—their job hard to deal with because of the complaint . . . . That it was going to be people losing their jobs about the complaint if it came to pass. Or once they did the investigation and found that everything were [sic] true, and then the investigators came back with their decision, that people would end up losing their jobs because of that.

The government recalled Szewczyk and Jones in rebuttal. Both of them denied saying what Parker had claimed they had said in reference to her EEOC charge.

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United*

*States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). "Evidence which is not relevant is not admissible." Fed. R. Evid. 402; *see United States v. Burge*, 711 F.3d 803, 814 (7th Cir. 2013). "Proof of bias is almost always relevant, as '[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.'" *United States v. Ozuna*, 674 F.3d 677, 682 (7th Cir. 2012) (quoting *United States v. Abel,* 469 U.S. 45, 51-52 (1984)).

Parker's EEOC charge against the bank and the facts surrounding the charge were of no consequence in this action other than to show a witness's bias. And, obviously, a witness cannot be biased based on information of which she is unaware. The *voir dire* of Szewczyk established that she was aware of Parker's claim against the bank, and the *voir dire* of Jones established that she was aware of Parker's EEOC charge. The district court allowed Parker to cross-examine these witnesses on their awareness of her claim or EEOC charge in an effort to show bias. We find no abuse of discretion in the district court's ruling on the government's motion in limine and its decision to limit the use of evidence about the EEOC charge to show bias on the part of Szewczyk and Jones.

### D. Parker's Right to Call Defense Witnesses

Parker argues that she was deprived of her right to offer the testimony of witnesses and compel their attendance. She submits that "she was deprived of her right

to call witnesses in her defenses based on a confusing set of circumstances relating to who was ultimately responsible for getting those witnesses to court."

A defendant has a Sixth Amendment right to present witnesses in her defense. *United States v. George*, 363 F.3d 666, 670 (7th Cir. 2004). But "the right is not unlimited. The defendant 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability.'" *Harris v. Thompson*, 698 F.3d 609, 626 (7th Cir. 2012) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)), *petition for cert. filed* 81 U.S.L.W. 3421 (U.S. Jan. 16, 2013) (No. 12-885). A defendant's right to compulsory process is violated "only when a court denies the defendant an opportunity to secure the appearance at trial of a witness 'whose testimony would have been relevant and material to the defense.'" *United States v. Williamson*, 202 F.3d 974, 979 (7th Cir. 2000) (quoting *Washington v. Texas,* 388 U.S. 14, 23 (1967)).

The record establishes that Parker was not denied the opportunity to present witnesses in her defense or compel their attendance at trial. The district court did not prohibit Parker from calling witnesses and securing their appearance at trial. On September 7, 2011, Parker decided to represent herself, and the court asked Attorney Kennedy, who had been her counsel, to be standby counsel. The court explained to Parker at the hearing that she "will be in charge. . . . [Standby counsel] is there to offer any assistance or advice that you might ask for. But the decisions about the case will be made by you, and you will be proceeding to represent yourself

at trial." It wasn't until after trial commenced and Parker had given an opening statement that Parker requested representation by counsel, and standby counsel was appointed to represent her. Thus, for two months leading right up to trial, Parker was in charge of preparing her own defense and, consequently, of issuing subpoenas to witnesses in her defense. She did not, however, subpoena any witnesses. The court offered Parker a brief continuance in order to find her witnesses and get them into court. But before Parker could take advantage of that opportunity, her counsel requested a brief recess to allow him to consult with Parker, which was granted, and counsel and Parker discussed the matter.

"An attorney . . . has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy," *Florida v. Nixon*, 543 U.S. 175, 187 (2004), but counsel is not required "to obtain the defendant's consent to 'every tactical decision,'" *id.* (quoting *Taylor v. Illinois,* 484 U.S. 400, 417-18 (1988) (an attorney has authority to manage most aspects of the defense without obtaining the client's approval)). A "lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (quoting *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997)). Indeed, Parker acknowledges that the decision whether to call a witness was her attorney's to make.

Of course, whether to testify in her own defense was Parker's decision to make. But whether to call any other witnesses was her lawyer's decision. The record shows that Parker's attorney consulted with her about whether to call any other witnesses and he decided against it. The attorney explained on the record that in another case, he had called a witness his client wanted to testify, and "watched that whole case fall apart." He was "not inclined to do it again." Thus, the record establishes that Parker was not deprived of her constitutional right to present witnesses in her defense or to compel their attendance at trial.

### E. Obstruction of Justice Enhancement

Lastly, Parker contends that the district court's findings were insufficient to justify application of an obstruction of justice enhancement to her sentence. Under U.S.S.G. § 3C1.1, a district court may enhance a defendant's offense level if she "willfully obstructed or impeded, or attempted to obstruct or impede" the investigation into her offense. A finding that the defendant committed perjury supports this enhancement. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Gomez*, 712 F.3d 1146, 2013 WL 1352540, at *10 (7th Cir. Apr. 5, 2013); U.S.S.G. § 3C1.1, cmt. n.4(B). "A defendant commits perjury if, while testifying under oath, [s]he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Johnson*, 680 F.3d 966, 981 (7th Cir.)

(quoting *Dunnigan*, 507 U.S. at 94), *cert. denied*, 133 S. Ct. 672 (2012).

To apply the enhancement based on perjury, "the district court should make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *Id.* Separate findings of each element of perjury, though preferable, are unnecessary if the court makes a finding that "encompasses all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95; *see also Gomez*, 2013 WL 1352540, at *11. Thus, it is sufficient if the court determines "'that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt.'" *Johnson*, 680 F.3d at 982 (quoting *United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001)). We review the adequacy of the district court's obstruction of justice findings de novo and review its underlying factual findings for clear error. *United States v. Taylor*, 637 F.3d 812, 817 (7th Cir. 2011).

We agree with Parker that the district court's findings in this case are insufficient. Parker gave testimony at trial: (1) denying any involvement in the check-cashing scheme and (2) claiming that she had conversations with Szewczyk and Jones about the investigation of her EEOC charge. Regarding Parker's denial of involvement in the scheme, we asked government counsel at oral argument to identify the judge's statement that most clearly indicates a finding of willful falsity. Counsel could not point to any such statement, but instead argued that the evidence proved Parker's guilt beyond

a reasonable doubt. Moreover, we are troubled by the judge's comment at sentencing, made while addressing the obstruction enhancement, that "Ms. Parker may even believe herself that she didn't negotiate these checks." This comment seems to suggest an absence of willfulness.

As government counsel conceded at oral argument, the district court never made an explicit finding of falsity as to Parker's testimony about the EEOC claim. Counsel argued instead that it was clear from the record that the judge thought Parker's testimony was false. While it is true that the judge noted that "the investigation had begun even before the investigators were aware of any EEOC claim," and "[t]here was no support for it other than Ms. Parker's suspicion or imagination," implicit findings are insufficient to support the obstruction enhancement in this case. These comments concern Parker's attempt to suggest that the bank investigators had improper motivations and were trying to "stick something on her because they were angry about [the EEOC charge]." Sent. Tr. 15. The court's comments do not directly relate to Parker's testimony about conversations she allegedly had with Szewczyk and Jones.

The government argues that any failure by the court to make findings as to the elements of perjury was harmless because the record contains ample evidence that Parker perjured herself at trial. We disagree. This case is unlike *United States v. Savage*, 505 F.3d 754, 764 (7th Cir. 2007), and *United States v. Saunders*, 359 F.3d 874, 879 (7th Cir. 2004) (court observed that defendant "took the

stand and told a lie which no one would believe'") , where the sentencing court found the defendant's testimony at issue was false but omitted findings as to willfulness and materiality, and we found the lack of precise findings harmless. The district court's comments leave us unsure as to whether the court found that Parker's denial of involvement in the scheme was willful. As for her testimony about the EEOC investigation, in making findings, the court focused almost entirely on the question of whether her testimony was material, but did not address whether the testimony was false. We do not suggest that the enhancement for obstruction of justice cannot be justified, provided that the appropriate findings are made. But in the context of this sentencing, the insufficiency of the findings about Parker's testimony cannot be considered harmless, and the obstruction enhancement appears to have been an important factor in the determination of the sentence imposed.

## III. Conclusion

For the foregoing reasons, we AFFIRM Parker's convictions, but we VACATE her sentence and REMAND this case for resentencing.