In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1628

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON L. NICHOLS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:15-cr-00051-jdp-1 — **James D. Peterson**, *Judge.*

ARGUED SEPTEMBER 23, 2016 — DECIDED FEBRUARY 6, 2017

Before RIPPLE, ROVNER, and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jason Nichols was charged with two
counts of possession of a firearm by a felon, in violation of 18
U.S.C. § 922(g). Prior to trial, Mr. Nichols moved to suppress
the evidence relating to the second count, and, following an
evidentiary hearing, the district court denied his motion. He
then pleaded guilty to count two, reserving his right to appeal
the suppression issue. The Government moved to dismiss the
first count and the court granted that motion.

In calculating the appropriate guidelines range, the district court denied Mr. Nichols credit for acceptance of responsibility and imposed an enhancement for obstruction of justice. It also concluded that he was not entitled to a reduction in his offense level on the ground that all the firearms and ammunition in his possession were used exclusively for sporting purposes. The court imposed a sentence of 27 months' imprisonment, at the low end of the applicable guidelines range.

Mr. Nichols now challenges his conviction and sentence. He contends that his confession to law enforcement was involuntary and should have been suppressed by the district court. He further contends that, in calculating his sentencing guidelines range, the court should have given him credit for acceptance of responsibility, *see* U.S.S.G § 3E1.1, and should not have imposed an enhancement for obstruction, *id.* § 3C1.1. Finally, he submits that his guidelines range should have been reduced because all of the contraband for which he was prosecuted was used for lawful sporting purposes. *See* U.S.S.G. § 2K2.1(b)(2).

We affirm. The district court was faced with opposing versions of the circumstances of Mr. Nichols's confession from Mr. Nichols himself and his probation officer; it made a credibility determination, which we have no cause to upset on appeal. In light of its determination that Mr. Nichols testified falsely in connection with his motion to suppress, the court committed no reversible error in applying the obstruction enhancement and denying credit for acceptance of responsibility. Finally, Mr. Nichols's unsupported statements failed to carry his burden of demonstrating that the contraband involved in his case was used exclusively for lawful sporting

purposes as would justify a reduction under U.S.S.G. § 2K2.1(b)(2).

# I

# BACKGROUND

## A.

On January 7, 2015, Mr. Nichols was involved in an altercation at his home that escalated when he threatened someone with a weapon. Responding officers of the Iowa County, Wisconsin Sheriff's Department took him into custody. During the subsequent investigation of the altercation, Mr. Nichols consented to a search of his property. During the search, officers found a black case for a Taurus brand handgun with six .40 caliber rounds in it, as well as a stray round in a cabinet. In the same cabinet, officers discovered a Taurus PT 58 SS .380 semi-automatic handgun with a fully loaded magazine along with other ammunition in a separate, zippered case. Mr. Nichols stated that he previously had sold a handgun without its case and that he had forgotten about the remaining handgun.

At the time of the incident, Mr. Nichols was serving a three-year probation term for a prior federal felony mail fraud offense. When his probation officer, Kris Kiel, learned of Mr. Nichols's arrest, she conducted a home visit. In the course of that visit, Mr. Nichols turned over to Officer Kiel a gallon-size container, half-full of various types of firearm ammunition as well as two or three shotgun shells, which he retrieved separately from a hunting vest.

**B.**

In April 2015, a federal grand jury indicted Mr. Nichols on one count of possession of a firearm and ammunition by a felon and one count of possession of ammunition by a felon, both in violation of 18 U.S.C. § 922(g). Mr. Nichols initially pleaded not guilty and moved to suppress the evidence underlying the second count. He claimed that any statements and surrender of contraband that he had made to Officer Kiel were involuntary and based on false promises of leniency.

A magistrate judge held a hearing on the motion. Officer Kiel testified that she had been a U.S. Probation Officer for twenty-three years. She described her review of the police report from the January 7 altercation, and the brief phone contacts she had with Mr. Nichols to set up the home visit on January 23. She noted that she had been concerned about the possibility that Mr. Nichols had a firearm on his property because the police report had noted the recovery of an empty handgun case. With respect to the visit itself, she described Mr. Nichols as calm and cooperative. She stated that she had inquired about the empty case and that he had told her that he sold the weapon without its case to a former girlfriend.

According to Officer Kiel, this exchange led to a conversation "about contraband and what constituted contraband."[1] She explained that "guns, ammunition, drugs, anything like that would be considered contraband" and asked whether he had any.[2] At that point, according to Officer Kiel, Mr. Nichols

---

[1] R.24 at 15.

[2] *Id.*

led the way to the basement and gave Officer Kiel "a gal-
lon-size half-full container of ammunition of various types."[3]
Officer Kiel then inquired whether there was any other con-
traband in the house, and Mr. Nichols led Officer Kiel and her
colleague back upstairs and took two or three shotgun shells
out of a hunting vest and gave them to her.

Officer Kiel affirmatively stated that neither in her pre-
visit calls nor in the home visit itself did she ever make any
promises of leniency to Mr. Nichols in exchange for his coop-
eration in turning over any contraband. She also did not
threaten him with revocation of his probation for failure to
answer questions or cooperate. She stated that it was the pol-
icy of the Probation Office to make no promises to defendants
who are under supervision. Officer Kiel also stated that, in her
many years as a Probation Officer, this occasion was only the
second time that someone had turned over a weapon or am-
munition to her. It was not her practice to request such a turn-
over; rather, she would inform those under her supervision of
the prohibition on contraband, what it covered, and conse-
quences for violation. She would reiterate this information on
multiple occasions throughout probation. The court also
asked several follow-up questions, and Officer Kiel noted that
she had begun discussing these prohibitions with Mr. Nichols
when he was in his pretrial phase for his prior offense. She
knew him to be an avid hunter, and she knew of the presence
of hunting equipment; once he was placed on probation fol-
lowing the conviction, she initiated and repeated the conver-
sations about contraband.

---

[3] *Id.*

Mr. Nichols also testified at the hearing. He claimed that "[s]hortly after being placed on probation" he discussed firearms and ammunition with Officer Kiel.[4] Specifically, according to Mr. Nichols, Officer Kiel had told him that "if [he] was to find any ammunition in the home" he should "give it to her."[5] In response, he claimed that he had "asked [Officer Kiel] if [he] would get in trouble and [Officer Kiel] said no."[6] He also claimed that in one of the phone calls to arrange the home visit in January 2015, Officer Kiel again had told him that he should hand over any ammunition to her for proper disposal, and again had promised that he would not "get in trouble" if he did so.[7] Mr. Nichols further claimed that, in that phone conversation, he responded that, to his knowledge, there was no ammunition in the home but that he had some unpacked boxes in the basement and was not sure of their contents. He further testified that, on the day of the visit itself, Officer Kiel again instructed him to hand over to her any contraband, which he did. Mr. Nichols also testified about an email he had sent to his attorney in May, after having seen the charge related to the contraband recovered from him on January 23. In the email, he noted that he had been promised that handing over contraband would not result in adverse consequences for him. He also stated that, had he not received these promises, he would have disposed of the ammunition himself.

---

[4] *Id.* at 30.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 31.

Based on both Officer Kiel's and Mr. Nichols's testimony, the magistrate judge issued a report and recommendation, which characterized the motion hearing as essentially "a swearing contest."[8] The magistrate judge accepted Officer Kiel's version of events and therefore recommended denial of Mr. Nichols's motion to suppress. The report found that Mr. "Nichols had plenty of opportunities to dispose of firearms and ammunition on his own."[9] Moreover, he had been alerted on numerous occasions of the consequences of contraband prior to the January incidents and had never disclosed the presence of the handgun recovered in early January or the ammunition. Allegations that he forgot were incredible, given that he "had been able to remember, recover and brandish his handgun in a trice while drunk and angry."[10] The report also found it "[e]qually incredible" that Mr. Nichols had sought assurances about immunity prior to *knowing that* there was contraband in the basement, but did not seek to confirm it once he had allegedly located the ammunition in advance of the home visit.[11]

Mr. Nichols objected to the report and recommendation of the magistrate judge. He first argued to the district court that the magistrate judge had relied on erroneous facts that were extraneous to the immediate matter at hand. He also contended that the magistrate judge erroneously had concluded that Mr. Nichols's perception of a promise of immunity was

---

[8] R.31 at 1.

[9] *Id.* at 7.

[10] *Id.* at 8.

[11] *Id.*

not a determinative factor. Finally, he contended that the factual record did not support the recommendation.

The district court overruled these objections and adopted the magistrate judge's recommendation. Specifically, the district court found that the magistrate judge properly had considered the allegations surrounding the altercation on January 7, 2015 because "[t]he allegation that Nichols had possessed a firearm during an incident that le[d] to his arrest is obviously part of the factual background of this case."[12] As for Mr. Nichols's "state of mind," the district court concluded that "[t]he decisive fact is what Kiel said, and it does not matter at all what Nichols believed. If Kiel did not make the promise, then it does not matter whether Nichols somehow convinced himself that she had."[13]

After the district court's denial of the motion to suppress, Mr. Nichols pleaded guilty to Count 2 of the indictment, the count involving the ammunition recovered by Officer Kiel; in exchange, the Government agreed to dismiss Count 1, involving the January 7 incident. Mr. Nichols reserved the right to appeal on the motion.

The presentence report recommended a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice and no reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Mr. Nichols objected not only to this recommendation, but also to the offense-level calculation. He contended that his offense level should be reduced to level 6 because the guns and ammunition that he possessed were used

---

[12] R.37 at 4.

[13] *Id.* at 5.

solely for lawful sporting purposes pursuant to § 2K2.1(b)(2).[14] The district court overruled these objections. Specifically, the court determined that Mr. Nichols had obstructed justice because he willfully had made material false statements at the evidentiary hearing. Moreover, because of his obstruction of justice, he was not entitled to a reduction for acceptance of responsibility. Finally, the district court found that Mr. Nichols had not demonstrated that the guns and ammunition possessed were used solely for lawful sporting purposes pursuant to § 2K2.1(b)(2).

The court then determined that Mr. Nichols's advisory guidelines range was 27 to 33 months and sentenced Mr. Nichols to 27 months' imprisonment with 3 years of supervised release. The court also revoked Mr. Nichols's probation and imposed 12 months' imprisonment concurrent to the 27-month sentence. Mr. Nichols timely appeals his conviction and sentence.

## II

## DISCUSSION

Mr. Nichols's appeal of his conviction rests on his claim that the district court erred in denying the motion to suppress. With respect to his sentence, he challenges both the imposition of the obstruction enhancement and the denial of credit for acceptance of responsibility. He also challenges the district

---

[14] That section provides, in pertinent part, "If the defendant … possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6." U.S.S.G. § 2K2.1(b)(2).

court's denial of the offense level reduction in U.S.S.G. § 2K2.1(b)(2); he continues to assert that all of the contraband recovered in relation to Count 2 was used for sporting purposes. We address each of these issues in turn.

**A.**

In a challenge to the denial of a motion to suppress, we review all factual determinations for clear error, and we review conclusions of law de novo. *United States v. Villalpando*, 588 F.3d 1124, 1127 (7th Cir. 2009). Accordingly, where the district court's factual findings are supported by the record, we will not disturb them. *United States v. Sands*, 815 F.3d 1057, 1061 (7th Cir. 2015). Credibility determinations receive special deference; we uphold them unless "completely without foundation" in the record. *United States v. Freeman*, 691 F.3d 893, 899 (7th Cir. 2012) (internal quotation marks omitted).

The parties agree, correctly, that a government agent's "false promise of leniency may render a statement involuntary." *Villalpando*, 588 F.3d at 1128. "An empty prosecutorial promise could prevent a suspect from making a rational choice by distorting the alternatives among which the person under interrogation is being asked to choose." *Id.* (internal quotation marks omitted).

As we previously noted, at the hearing on his motion to suppress, Mr. Nichols and his probation agent, Officer Kiel, gave testimony in direct conflict. Indeed, the magistrate judge called it "a swearing contest,"[15] and the district court noted

---

[15] R.31 at 1.

that it was "a straightforward credibility contest."[16] The district court found believable Officer Kiel's version of the events: as a twenty-three-year veteran of the Probation Office, it is unlikely that Officer Kiel violated her office's policy and made a promise of leniency (or immunity) to Mr. Nichols. Moreover, the context of Officer Kiel's inquiry bolsters her version of events. As the magistrate judge noted:

> The court's general take-away from Kiel's version of events is that she and Nichols had had the "no-guns-or-ammo" conversation several times while Kiel was supervising Nichols, but Kiel never told Nichols that he would have to surrender this sort of contraband over to her or to law enforcement. In other words, Nichols had plenty of opportunities to dispose of firearms and ammunition on his own, without consequence. … Nichols faced no Catch-22 here.[17]

Nothing in the record suggests that Officer Kiel's version of events is "exceedingly improbable." *United States v. Vallar*, 635 F.3d 271, 283 (7th Cir. 2011) (internal quotation marks omitted). We therefore accept the district court's credibility determinations and accept its further findings of fact.

Mr. Nichols also submits that, in finding him incredible, the district court erroneously relied on disputed factual material not in evidence in this case. Specifically, he notes that the district court relied in part on the fact that he had been told on several occasions prior to the January incidents that

---

[16] R.37 at 2.

[17] R.31 at 7–8.

he was prohibited from possessing firearms and ammunition as a condition of his probation. Although he claimed to have forgotten about the presence of firearms and ammunition in his home, the court noted that he was able to retrieve a firearm during the January 7 dispute and threaten someone with it, which indicated that he had made false statements about his possession of contraband prior to January 23.

We need not decide whether the district court should have considered the statements about the January 7, 2015 incident and his weapon possession at that time. Even if Mr. Nichols did not retrieve a weapon on January 7 during an altercation, the fact remains that, prior to January 7, he had been warned about the consequences of firearm possession and never had sought to search his possessions and dispose of all firearms and ammunition on his own. The district court did not err in considering this warning as part of its overall assessment of credibility.

Finally, the district court properly considered not only the plausibility of the two versions of events, but also the motivations of the witnesses. Considering all that evidence, the district court found Officer Kiel credible and accepted her version of events; we see no basis to disrupt those findings.

Mr. Nichols also contends that the district court erred in determining that his belief that he could turn over the ammunition without negative consequences was irrelevant to the suppression motion. The district court took a different view. It found that the possibility that Mr. Nichols had a mistaken belief that he had been promised leniency or immunity for his conduct was not raised reasonably by the record. We agree. The evidence at the suppression hearing presented, as the district court characterized the situation, "a stark, binary contrast

between two alternative versions of the facts: Nichols claims that Kiel expressly promised him immunity; Kiel denies ever saying such a thing. If Nichols is right that Kiel promised him immunity, then the statements to Kiel and the ammunition must be suppressed."[18] We are left with two alternatives: either Officer Kiel coerced Mr. Nichols by promising him that he would not get in trouble for turning over contraband to her or she did not. We already have credited the district court's findings in this regard.

In sum, the district court's ruling on the motion to suppress was based on a factual conclusion that there were no promises of immunity or leniency. That finding was based on credibility determinations made about witnesses at the suppression hearing. We see no basis to reverse the district court's determination on the voluntariness of the admissions to Officer Kiel or on the physical evidence obtained as a result.

### B.

The Sentencing Guidelines permit a two-level enhancement for obstruction of justice

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstruc-

---

[18] R.37 at 5.

> tive conduct related to (A) the defendant's of-
> fense of conviction and any relevant conduct; or
> (B) a closely related offense[.]

U.S.S.G. § 3C1.1. We review the district court's determination that a defendant satisfies the requirements of the obstruction of justice enhancement de novo, and its supporting factual findings for clear error. *United States v. Jackson*, 787 F.3d 1153, 1159 (7th Cir. 2015). In applying the enhancement, the district court concluded that Mr. Nichols had testified falsely at the suppression hearing.

Both parties agree that a finding that the defendant committed perjury is sufficient to justify the enhancement. *See id.* "To apply the enhancement based on perjury, the district court should make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *Id.* (internal quotation marks omitted).

On this point, Mr. Nichols continues to assert factual error by the district court in refusing to credit his testimony, a position we already have rejected. In addition, Mr. Nichols invites the court's attention to scattered comments by the magistrate judge and the district court which, taken together, could be read to suggest that he did not form the necessary intent for an obstruction enhancement. He likens his case to *United States v. Parker*, 716 F.3d 999 (7th Cir. 2013), in which we held that the obstruction enhancement was improper where the court had commented that the defendant "may even believe herself that she didn't negotiate these checks," which suggested an absence of willfulness. *Id.* at 1012 (internal quotation marks omitted). Indeed, we stated that the district court's comments in *Parker* left us "unsure as to whether

the court found that Parker's denial of involvement in the scheme was willful." *Id.*

Mr. Nichols points us to what he perceives are parallel comments in his own record, specifically, the magistrate judge's comment that he "'would not speculate as to Nichols'[s] actual thought process'" and that "'perhaps Nichols has convinced himself that Kiel really did offer him absolution in the abstract,'"[19] and the district court's comment that "there may be an arguable position" that Mr. Nichols did not make willingly false statements.[20] Unlike in *Parker*, however, the record here is unambiguous regarding the district court's ultimate conclusions on willfulness. That the district court asked the parties to *argue* willfulness shows its thorough and deliberate consideration of the issue. After hearing from both sides, it plainly found that the record supported a finding of willfulness. In short, *Parker* is inapposite where, as here, the district court heard argument and made explicit findings on the willful falsity of Mr. Nichols's statements. The district court therefore did not err in applying the enhancement for obstruction of justice.

Mr. Nichols also challenges the denial of the downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. The Guidelines permit a defendant to receive *both* the obstruction enhancement and credit for acceptance of responsibility only in "extraordinary cases" because conduct supporting the enhancement generally indicates that he has not accepted responsibility. U.S.S.G. § 3E1.1 cmt. n.4; *see also United States v. Black*, 636 F.3d 893, 900 (7th Cir. 2011); *United*

---

[19] Appellant's Br. 26 (quoting R.31 at 9).

[20] R.59 at 6, *see also id.* at 8–9.

*States v. Krasinski*, 545 F.3d 546, 554 (7th Cir. 2008). The defendant "bears the burden of proving that he is entitled to a reduction." *United States v. Purchess*, 107 F.3d 1261, 1266 (7th Cir. 1997) (internal quotation marks omitted). "Whether a defendant has accepted responsibility is a factual finding, which we review for clear error and accord great deference" to the sentencing judge. *United States v. Pons*, 795 F.3d 745, 747 (7th Cir. 2015).

Mr. Nichols argues that he is entitled to an adjustment for acceptance of responsibility for several reasons: he never denied possession of the contraband charged in Count 2; he entered a timely guilty plea following denial of his suppression motion; and he challenged only the voluntariness of his confessional statements and acts. He relies on decisions which hold that a defendant's decision to raise a legal challenge to admitted facts or otherwise to challenge the admissibility of evidence do not automatically preclude the § 3E1.1 adjustment. *See United States v. Washington*, 340 F.3d 222, 230 (5th Cir. 2003); *Purchess*, 107 F.3d at 1267.

The record does not support the view that the district court denied the adjustment because of Mr. Nichols's legal challenges; instead, it based its denial on Mr. Nichols's obstruction of justice by giving false testimony at the suppression hearing. The court's findings about his untruthfulness are an adequate basis to support denying the adjustment. *See, e.g.*, *United States v. Yusuff*, 96 F.3d 982, 990 (7th Cir. 1996) (denying credit for acceptance where the defendant pleaded guilty and "admitt[ed] guilt" but obstructed justice by giving false testimony at a suppression hearing about the conduct of investigating officers). There is simply nothing in the record

to indicate that this case presents the kind of extraordinary circumstances envisioned by the application notes.

### C.

At sentencing, Mr. Nichols asserted that he was entitled to a reduction of his offense level down to level 6, under U.S.S.G. § 2K2.1(b)(2), which applies "if the defendant … possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." Application Note 6 suggests that relevant circumstances in this analysis include "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." U.S.S.G. § 2K2.1(b)(2) cmt. n.6. A defendant bears the burden of proof on his eligibility for the sporting reduction. *See United States v. Gresso*, 24 F.3d 879, 880 (7th Cir. 1994).

The parties agree that target shooting qualifies as a sporting purpose under the guideline. *United States v. Lewitzke*, 176 F.3d 1022, 1028 (7th Cir. 1999). Mr. Nichols contends that the firearm and ammunition confiscated on January 7, 2015, as well as the ammunition provided to Officer Kiel during the home visit, were for sporting purposes. Mr. Nichols asserts that the district court erred in denying a reduction under the "sporting purpose" guideline by concluding that target practice was not a sporting activity.

In denying the applicability of the guideline, the court noted that it was "not limited to considering only the ammunition that was in the plastic bag that was turned over to Ms. Kiel" but also could consider the contraband retrieved during the January 7, 2015 incident, which included a "handgun and the ammunition for it."[21] The court continued that it would not allow the exception to swallow the rule and noted that "there's virtually no weapon that you couldn't say wasn't used in a sporting way if you consider target practice to be a sporting activity."[22] Any suggestion that the court denied that target practice was a sporting activity as a blanket matter is belied by the district court's written statement of reasons, which we review alongside the transcript. *See United States v. Pape*, 601 F.3d 743, 747 (7th Cir. 2010); *United States v. Baker*, 445 F.3d 987, 991–92 (7th Cir. 2006). That statement does not reject target shooting as a sporting purpose, but instead discusses the number, type, and location of the contraband recovered in considering whether to apply the exception. This reasoning was proper under the application notes to § 2K2.1. Most importantly, the only evidence in the record that *all* the contraband was used exclusively for sporting is Mr. Nichols's own statement, which the district court did not credit. Mr. Nichols bore the burden on this issue, and he did not create a record that made a convincing case for the district court. The district court therefore did not err in denying the reduction under the sporting purposes guideline.

---

[21] R.59 at 12.

[22] *Id.*

**Conclusion**

The district court's factual finding at Mr. Nichols's suppression hearing, based on its credibility assessments of Mr. Nichols and his Probation Officer, is not clearly erroneous, and therefore, the court did not err in finding that his confessional acts were voluntary. Furthermore, the false testimony that Mr. Nichols provided at his suppression hearing is an adequate basis for the court to have both imposed the enhancement for obstruction of justice and denied the adjustment for acceptance of responsibility. Finally, Mr. Nichols failed to carry his burden to show that all the contraband recovered in January 2015 was used exclusively for sporting purposes, where his only affirmative evidence was his own unsupported statements. We therefore affirm Mr. Nichols's conviction and sentence.

AFFIRMED