In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2898

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY J. NORTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 15-cr-2 — **Theresa L. Springmann**, *Chief Judge.*

ARGUED MARCH 28, 2018 — DECIDED JUNE 20, 2018

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* After a six-day trial, a jury convicted
Larry Norton of conspiring to distribute and conspiring to
possess with intent to distribute large quantities of heroin and
cocaine. The district court sentenced Norton to a mandatory
life term of imprisonment. Norton now appeals his convic-
tion, challenging the district court's denial of his motion to
suppress evidence obtained as a result of a traffic stop and the

district court's admission at trial of recorded statements made by a confidential informant. We affirm.

## I. BACKGROUND

Larry Norton handled cocaine and heroin distribution for a large drug conspiracy. During the conspiracy, Norton drove to Chicago, Illinois and Akron, Ohio to move drugs or drug proceeds. Customers would also pick up drugs at his home in Fort Wayne, Indiana.

Law enforcement recruited a member of the conspiracy to record conversations, and on October 2, 2014, the informant did so. During that conversation, the informant, Norton, and other members of the conspiracy sampled their heroin and discussed business strategy.

The following month, the informant told federal drug task force officers that Norton planned to move $400,000 of drug proceeds. The federal officers contacted Indiana State Police Officer Brad Shultz to plan a stop. They told Shultz to wait for them to identify the vehicle and make a traffic stop when they signaled him to do so.

On the morning of November 7, Norton left his home and proceeded to the highway. Task force officers trailed Norton for about 20 miles. During that time, Special Agent Jeffery Robertson tried to measure Norton's speed by pacing him. He later testified that Norton was "close to the speed limit, but he was, as other cars were around us, he was over the speed limit. He was in the range of 70 to 75." (R. 121 at 94.)

The federal officers identified Norton's vehicle to Officer Shultz. As Norton crossed into a construction zone, Agent Robertson told Shultz that Norton was driving 72 mph in a 55

mph construction zone. Agent Robertson then instructed Officer Shultz to make the stop.

Officer Shultz testified that he used his radar gun to confirm that Norton was going 72 mph. He also checked Norton's speed by matching it with his own car's speed. After exiting the construction zone, Officer Shultz pulled Norton over.

During the stop, Norton allowed Officer Shultz to search his car. As Officer Shultz inspected the vehicle, he found an unusual wire near the gas pedal and a shell casing. His drug sniffing dog also signaled to multiple parts of the vehicle. Officer Shultz did not arrest Norton, but he did impound the vehicle. And after obtaining a search warrant, law enforcement conducted a more thorough search, discovering $400,000 in cash.

Months later, law enforcement arrested Norton inside a house located a few miles north of the Mexican border. During the arrest, authorities also found a heat sealer, Norton's wallet, and $179,000 in cash inside the home. Norton was indicted on one count of conspiring to distribute and possess with intent to distribute 1 kilogram or more of heroin and 5 kilograms of more of cocaine.

Before trial, Norton moved to suppress the evidence collected from his vehicle. A two-day evidentiary hearing was held before a magistrate judge. At the hearing, officers testified that they believed the speed limit in the construction zone was 55 mph as Norton drove through it because construction lights were flashing. An Indiana Department of Transportation employee testified that, in fact, the lights had not been flashing at that time and that the speed limit had thus been 70 mph.

Although the magistrate credited the testimony of the De-
partment's employee as to the speed limit, it nevertheless con-
cluded that Norton had exceeded the posted speed limit of 70
mph by traveling at 72 mph. The magistrate concluded that
this was enough to provide Officer Shultz with probable
cause to conduct the traffic stop and recommended that the
court deny the motion to suppress. Over Norton's objection,
the district court adopted the magistrate's finding that Norton
had exceeded the speed limit and denied the motion.

The case eventually proceeded to trial. During the trial, the
government also offered the informant's October 2 recording
as evidence. Norton objected to the introduction of the record-
ing on the basis that the informant's statements were inadmis-
sible hearsay because they did not provide context for the
other statements in the recording. The district court overruled
the objection, but it provided two limiting instructions.

After a six-day trial, the jury convicted Norton. The dis-
trict court sentenced Norton to mandatory life imprisonment.
This appeal followed.

## II. ANALYSIS

On appeal, Norton challenges his conviction on two bases.
First, he argues that the district court erred by introducing the
evidence obtained as a result of the traffic stop. Second, he
contends that the district court erred by admitting the inform-
ant's statements from the October 2 recording. For the reasons
explained below, both arguments fail.

*A. The district court correctly decided Norton's motion to sup-
press.*

An officer has probable cause to conduct a stop when he
reasonably believes that the driver is speeding. *Whren v.*

*United States*, 517 U.S. 806 (1996). Norton contends that the district court erred by denying his motion to suppress because it could not have reasonably concluded that he was driving at 72 mph before he was stopped. We review such factual findings for clear error. *United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004). This highly deferential standard is met only when the court "cannot avoid or ignore a 'definite and firm conviction that a mistake has been made.'" *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir. 2010) (quoting *United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009)). Moreover, we give "special deference" to credibility determinations and will "uphold them unless 'completely without foundation' in the record." *United States v. Nichols*, 847 F.3d 851, 857 (7th Cir. 2017) (quoting *United States v. Freeman*, 691 F.3d 893, 899 (7th Cir. 2012)).

The district court based its conclusion that Officer Shultz had probable cause to stop Norton on the finding that Norton had exceeded the speed limit. This factual finding is not clearly erroneous. At the evidentiary hearing, Officer Shultz testified that Norton was exceeding the speed limit based on his radar reading and the speed of his own car. That testimony was consistent with Agent Robertson's testimony that Norton's speed was "in the range of 70 to 75." (R. 121 at 94.) It's true that another federal agent testified that Norton was travelling at 70 or 71 mph before the stop. But the district court is entitled to resolve discrepancies and credit the testimony of some witnesses over others. Here, the district court credited Officer Shultz's testimony and we do not have a definite and firm conviction that it was a mistake to do so. The district court therefore did not err by denying Norton's motion to suppress.

*B. The district court did not abuse its discretion by admitting the informant's statements.*

Norton also argues that the district court erred by admitting the informant's statements from the October 2 recording. We review the district court's decision to admit evidence for abuse of discretion and will reverse that decision "only when the record contains no evidence on which the district court rationally could have based its ruling." *United States v. Quiroz*, 874 F.3d 562, 569 (7th Cir. 2017) (quoting *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010)).

An out-of-court statement admitted for the truth of the matter asserted is inadmissible hearsay. Fed. R. Evid. 801. But when the statement is offered to provide context for the words or actions of others rather than the statement's truth, it is admissible. *Quiroz*, 874 F.3d at 569–70. Contrary to Norton's belief, this exception is not limited to conversations between two parties so long as the out-of-court statements provide context.

Here, the informant's statements provided context for the statements and actions of the conversation's other participants. Take, for instance, the following discussion between Norton and the informant about how to cut heroin:

> Informant: No, no, this, this shit, I'd make so much more off this if, if I learn how to cut it, if I learn how to cut it, as long as it's raw it's in chunk form and you can't taste anything nasty, it don't, it don't taste funny …
>
> Norton: (Unintelligible)
>
> Informant: … it's smooth they think it's raw.
>
> Norton: That's why you put milk sugar on it. Milk sugar don't have no taste and what it does is you put

> it in the oven so the milk sugar match, match, match the, uh China white.
>
> Informant: Match the color?
>
> Norton: Yeah. And then all you gotta do is lay a line out.

(Appellee's App. at 42.) In this exchange, the informant's statements clarify Norton's statements about milk sugar. His comments are similarly helpful throughout the recording. Moreover, the district court twice provided the jury with a limiting instruction. *United States v. Zizzo*, 120 F.3d 1338, 1348 (7th Cir. 1997) (approving the use of limiting instructions when admitting informant's statements to provide context and presuming that jurors follow them). The district court therefore did not err by admitting the statements.

Regardless, any error would be harmless. Norton challenges only the informant's statements from the recording. He does not contest his own statements or those of his coconspirators. And in the recording, those parties discuss the strength of their heroin, how to dilute it, and other elements of business strategy. Those statements are sufficiently inculpatory. Thus, the exclusion of the informant's statements would not have affected the outcome of Norton's case. *See Quiroz*, 874 F.3d at 571.

### III. CONCLUSION

The district court correctly decided Norton's motion to suppress evidence obtained during the traffic stop. It also did not abuse its discretion by admitting the informant's recorded statements. We therefore AFFIRM Norton's conviction.