**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2020[*]
Decided May 11, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1624

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:17-cr-00517-1 |
| ANDREW JOHNSTON, *Defendant-Appellant*. | Rebecca R. Pallmeyer, *Chief Judge*. |

**O R D E R**

Andrew Johnston has been convicted of and sentenced for attempted bank robbery. See 18 U.S.C. § 2113(a). He now argues that, before trial, the district court should have dismissed his indictment, during trial it should have excluded evidence and instructed the jury differently, and after trial it should have entered a judgment of acquittal or sentenced him differently. His arguments are without merit, so we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

In July 2017, a white male wearing gloves, a mask, and a black hat with the word "Security" on it approached a teller at a Byline Bank branch in Harwood Heights, Illinois, and ordered: "Put your hands up. This is a robbery." The teller was shocked and feared for her life. A branch supervisor and a customer at the drive-by window saw the exchange. The supervisor heard the robber say that his family had been kidnapped and that he had debts; the customer waved his phone and mouthed that he was going to call 911. The robber saw the teller nod to the customer and fled.

Based on help from the customer, who called 911 and pursued the robber, the police soon caught him. The customer saw him drive off in a green car and described the car's make, model, and license plate, as well as the robber's clothes, to emergency dispatch. A police officer heard about the attempted robbery from dispatch, including the descriptions of the suspect and his car. Approximately two miles from the bank, the officer saw a green car matching dispatch's description, pulled it over, and ordered the driver out. Andrew Johnston stepped out, and other officers soon arrived on the scene. When they peeked through the car's windows, they saw a black "Security" cap in plain view, as well as the gloves and mask described by dispatch. About 20 minutes after the attempted robbery, they brought Johnston to the bank for a show-up. The teller and her supervisor each viewed Johnston (without any mask or hat) separately through a window and identified him as the robber based on his eyes and voice. A grand jury later indicted him for attempted robbery under 18 U.S.C. § 2113(a), which punishes anyone who "by force and violence, or by intimidation … attempts to" rob a bank.

Representing himself with the assistance of standby counsel, Johnston filed several unsuccessful pretrial motions. He moved to dismiss the indictment because the court lacked jurisdiction (on the theory that Byline Bank was not federally insured); because the indictment failed to allege "intimidation" adequately; and because the government was withholding material evidence that he had sought through discovery. The court denied the motions. It accepted the government's answer that it had no items responsive to Johnston's discovery requests, ruled that the indictment adequately put Johnston on notice of the crime, and reserved the jurisdictional issue for trial. (Later at trial, the government presented witness testimony and insurance documents showing that Byline Bank was federally insured by the Federal Deposit Insurance Corporation.)

After several continuances to allow him to complete his factual investigation and to serve subpoenas for documents and witnesses, Johnston went to trial. He moved to suppress evidence recovered from his car and the bank tellers' identification of him at the show-up. When the district court ruled that this evidence was admissible, Johnston

asked the district court to recuse itself as biased. The court refused, explaining that adverse rulings were not grounds for recusal. Johnston then tried to mount an alibi defense and argue that the government arrested the wrong person for the attempted robbery. For this defense, he wanted to call witnesses. The court explained that Johnston had to bring his witnesses to court. It advised him to use standby counsel to help coordinate the witnesses, and it promised to compel their attendance if he brought motions to enforce his subpoenas. But Johnston never followed through. Later, after closing arguments, he unsuccessfully moved for a judgment of acquittal. The court instructed the jury that the government had to prove beyond a reasonable doubt that, by using "intimidation," Johnston attempted to take money from Byline Bank. The court defined intimidation as doing "something that would make a reasonable person feel threatened under the circumstances." The jury returned a guilty verdict, and the court denied Johnston's later posttrial motions to alter the judgment.

Sentencing followed. Johnston was designated a career offender based on his current conviction and two prior convictions for bank robbery. He unsuccessfully objected on the ground that he had not used violent force in the attempted robbery. Applying the designation, the court sentenced him to 168 months in prison.

On appeal Johnston renews his pretrial arguments, contentions from trial, and post-trial challenges. We begin with his pretrial arguments that the district court should have dismissed his indictment. First, he argues that the FDIC does not insure against bank robbery and is not involved in robbery prosecutions, so it does not supply a basis for jurisdiction. But FDIC-insured banks are instrumentalities of interstate commerce, the robbery of which Congress may criminalize under the Commerce Clause. See *United States v. Watts*, 256 F.3d 630, 633–34 (7th Cir. 2001). And district courts have jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231. To the extent that Johnston faults the court for allowing the case to proceed to trial without advance proof of Byline Bank's FDIC-insured status, the district court correctly ruled that the government could provide evidence of the bank's insured status at trial, which it did. See, *e.g.*, *United States v. Hagler*, 700 F.3d 1091, 1100 (7th Cir. 2012).

Second, Johnston argues that the court should have dismissed the indictment for failing to allege adequately that he attempted to rob a bank by intimidation. But the indictment tracked the language of the statute and provided the date, time, and address of the incident. It therefore adequately put him on notice of the charged offense. See *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008).

Third, Johnston appears to argue that the district court should have dismissed the case because the government withheld material evidence. Prosecutors must disclose to a defendant favorable, material evidence that they possess. See, *e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). But the government told the court that it had no material evidence responsive to his requests, and Johnston provides us with no compelling reason to question that assertion.

We now turn to the challenges that Johnston renews from the trial. First, he contests the admission of the evidence recovered from his car, maintaining that his stop, arrest, and car search were unconstitutional. But the district court properly ruled that the customer's contemporaneous description of the robber's vehicle to 911, which matched the make, color, and license plate of Johnston's car, supplied probable cause for an arrest for attempted robbery. See *Maniscalco v. Simon*, 712 F.3d 1139, 1144 (7th Cir. 2013) (finding probable cause to arrest a suspect for an offense that "just" occurred where the suspect's license plate matched the victim's report). And even if the customer's tip was sufficient to justify only an investigatory stop, officers saw in plain view, and therefore could lawfully seize, the gloves, mask, and "Security" cap matching the dispatcher's report. See *United States v. Cherry*, 920 F.3d 1126, 1137–38 (7th Cir. 2019).

Johnston also argues that the district court should have suppressed the eyewitness identifications because the show-up procedure, which involved a heavy police presence, was unduly suggestive. But show-up identifications are not necessarily invalid if police use them to confirm the identity of suspects apprehended close in time and place to the crime. See *United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007). Johnston's show-up occurred just twenty minutes after the robbery, so the memories of the two eyewitnesses, who had just observed the crime, were fresh and enabled them to identify him on the basis of his voice and his eyes. Further, law enforcement minimized the suggestiveness of the procedure by separating the witnesses and presenting Johnston without his mask and hat. See *id.* at 708. Thus, suppression was not required.

Next, Johnston complains that the court interfered with his right to compulsory process, thwarting his alibi defense. But the record does not bear out his assertion. During the trial, the court explained that Johnston was responsible for bringing his witnesses to court, it advised him how to do so, and it promised to compel their appearance if he brought a motion to enforce his trial subpoenas, which he did not do. The court thus did not prevent him from presenting a complete defense. See *United States v. Parker*, 716 F.3d 999, 1010–11 (7th Cir. 2014).

Finally, Johnston raises challenges to the jury instructions. He argues that the district court failed to instruct the jury that to convict it had to find that he used "force and violence." But the statute of his offense criminalizes the taking of bank property "by force and violence, *or* by intimidation." 18 U.S.C. § 2113(a) (emphasis added). The district court therefore correctly stated the law, and because Johnston was charged only with attempted robbery by intimidation, it had no obligation to instruct the jury on the "force and violence" clause. See *United States v. Matthews*, 505 F.3d 698, 704 (7th Cir. 2007). Relying on *United States v. Loniello*, 610 F.3d 488 (7th Cir. 2010), Johnston also insists that he was entitled to an instruction for the "lesser included offense" of the second paragraph of § 2113(a), which criminalizes entering a bank with the intent to commit a felony. But in *Loniello* we held only that the second paragraph of § 2113(a) described an offense distinct from the one in the first paragraph, not a lesser included offense. *Id.* at 492, 496. And both paragraphs carry the same penalty of up to 20 years' imprisonment, so we see no error. See *Prince v. United States*, 352 U.S. 322, 329 (1957).

We turn next to Johnston's post-trial challenges. First, he argues that the evidence against him was insufficient to convict. But the jury received evidence that Byline Bank was federally insured, and that a masked Johnston entered and told the teller, "Hands up. This is a robbery." Even though Johnston was unarmed, these words and actions would be sufficient to intimidate a reasonable person to turn over the bank's money. See *United States v. Burnley*, 533 F.3d 901, 903–04 (7th Cir. 2008). Viewing this evidence in the light most favorable to the government, we conclude that a rational jury could use it to find Johnston guilty of attempted bank robbery by intimidation beyond a reasonable doubt. See *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009).

Johnston also challenges his status as a career offender, arguing that his conviction is not a "crime of violence." He appears to rely on *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), to argue that attempted bank robbery by intimidation cannot be a categorical crime of violence because he was convicted without proof that he used, or threatened to use, force capable of causing physical injury. But *Stokeling* merely re-iterated that "physical force" under the guidelines means "force capable of causing physical pain or injury." See *id.* And we have previously held that federal bank robbery by "intimidation" is a categorical crime of violence because a threat of such force is implied in the intimidation element. See *United States v. Williams*, 864 F.3d 826, 830 (7th Cir. 2017). *Stokeling* thus does not disturb our precedent that federal bank robbery by intimidation is a "crime of violence" under the guidelines. And because Johnston does not dispute that he has two prior convictions for bank robbery, the district court did not err in designating him a career offender. See U.S.S.G. § 4B1.1(a).

Johnston presents several additional arguments that require little discussion. We mention one briefly—his motion to disqualify the district judge based on adverse rulings. Adverse rulings by a judge neither constitute bias nor demonstrate a need for recusal. See *Liteky v. United States*, 510 U.S. 540, 555 (1994). We have considered Johnston's remaining arguments, and none has merit.

AFFIRMED